ELLEN F. ROSENBLUM
Attorney General
SHANNON M. VINCENT  #054700
Senior Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 947-4700
Fax: (503) 947-4791
Email:  shannon.m.vincent@doj.state.or.us

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| RAFAEL MORA-CONTRERAS; and SHANE STAGGS, <br><br> Plaintiffs, <br><br> v. <br><br> COLETTE PETERS; DOUG YANCEY; MEGHAN LEDDY; ZACHARY GOULD; CRAIG PRINS; JERRY PLANTE; JEREMY NOFZIGER; AND JOHN DOES 1-5, <br><br> Defendants. | Case No.  6:18-CV-00678-SB <br><br> DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT <br><br> **Fed. R. Civ. P. 12(b)(6)** |

**CERTIFICATE OF CONFERRAL**

Pursuant to L.R. 7-1(a)(1)(A), counsel for defendants certifies that the parties made a

good faith effort by telephone to resolve the dispute in this motion but were unable to do so.

**MOTION**

Plaintiffs Rafael Mora-Contreras and Shane Staggs are suing the Director of the Oregon

Department of Corrections (ODOC) and ODOC employees for alleged constitutional violations.

Page 1 -    DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT
SMV/bl2/9194157-v1

At all times material to plaintiffs' complaint, Mr. Mora-Contreras and Mr. Staggs were ODOC inmates.[1]  Mr. Mora-Contreras and Mr. Staggs allege that they were "punish[ed] . . . without due process" in connection with investigations into inmate drug use and a riot at Oregon State Penitentiary (OSP) in the summer of 2016.  (Am. Compl., Dkt. #27, pp. 1, 4).

Mr. Mora-Contreras alleges that he was placed in administrative segregation for 68 days beginning April 22, 2016, in connection with the investigations at OSP, and that he was later transferred to Two Rivers Correctional Institution (TRCI).  (*Id.* at ¶¶ 28, 39).  Likewise, Mr. Staggs alleges that he was placed in segregation for investigations—citing a one week stay in segregation  in October of 2016 after his cellmate was caught with drugs in his pocket, and time in segregation "from November to January 2017."  (*Id.* at ¶¶ 44, 48).  Plaintiffs allege that defendants infringed on their rights to procedural and substantive due process, to be free from cruel and unusual punishment, to equal protection, and to be free from compelled speech and from being retaliated against for refusal to give false testimony.  (*Id.* at pp.12-17).  They seek money damages and declaratory and injunctive relief.

Defendants move the Court for an order dismissing plaintiffs' case for five reasons:  (1) Mr. Mora-Contreras's claim for declaratory and injunctive relief is moot; (2) the injunctive relief that plaintiffs are seeking does not comply with the PLRA's restriction on prospective injunctive relief; (3) plaintiffs have not pleaded the facts necessary to support their constitutional claims; (4) plaintiffs have not pleaded that Defendants Director of ODOC Colette Peters, Inspector Meghan Leddy,  Correctional Officer Zachary Gould, Inspector General Craig Prins, or Hearings Officer Jeremy Nofziger personally participated in any alleged constitutional violations; and (5) defendants are entitled to qualified immunity from damages.

---

[1] Mr. Mora-Contreras was granted a new trial in a case for post-conviction relief, *State v. Mora-Contreras*, Washington County Circuit Court Case No. C012039CR, and he was then transferred to the Washington County Sheriff's Office's custody.

Pursuant to Federal Rule of Evidence 201, defendants ask the Court to take judicial notice of two facts:  (1) Mr. Mora-Contreras was granted post-conviction relief in Washington County Circuit Court Case No. C012039CR; and (2) Mr. Mora-Contreras is currently housed at Washington County Jail, https://www.co.washington.or.us/sheriff/jail/who-is-in-custody.cfm?alpha=M.

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

This motion is based on the following memorandum of law and the pleadings and filings herein.

## MEMORANDUM OF LAW

### I.    Applicable Legal Standard.

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for failure to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).

In considering a Rule 12(b)(6) motion, a court must accept the plaintiff's material factual allegations as true and view all facts in the light most favorable to the plaintiff.  *Reynolds v. Giusto*, Case No. 08–CV–6261, 2009 WL 2523727, at *1 (D. Or. Aug. 18, 2009).  A complaint must include facts sufficient to give proper notice of the claim and its basis:  "While a complaint attacked [under] Rule 12(b)(6) . . . does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (brackets omitted).

### II.    Legal Argument.

#### A.    Mr. Mora-Contreras's claim for declaratory and injunctive relief is moot.

Because Mr. Mora-Contreras has released from ODOC custody and there is no reasonable expectation or demonstrated probability that he will again be subjected to the prison conditions from which he seeks injunctive relief, his claims for injunctive relief should be dismissed as moot.  *Dilley v. Gunn*, 64 F.3d 1365, 1368-69 (9th Cir. 1995); *see also Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012) (same for claims for declaratory relief).  Plaintiff no longer has a legally cognizable interest in the outcome of this case:

> "Once an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim.  Any declaratory or injunctive relief ordered in the inmate's favor in such situations would have no practical impact on the inmate's rights and would not redress in any way the injury he originally asserted.  And the [released] inmate has no further need for such declaratory or injunctive relief, for he is free of the policy or practice that provoked his lawsuit in the first place."

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

*Alvarez*, 667 F.3d at 1064 (citation omitted).

In light of Mr. Mora-Contreras's release from prison, his request for injunctive and declaratory relief should be dismissed as moot.

**B.    The injunctive relief that plaintiffs are seeking does not comply with the PLRA's restriction on prospective injunctive relief.**

Plaintiffs' proposed injunctive relief does not comply with the Prison Litigation Reform Act's (PLRA's) restrictions on prospective injunctive relief.  Under the PLRA:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs.  The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A).  A prospective injunction is only appropriate under the PLRA when it is narrowly drawn and is "the least intrusive means necessary" to vindicate a constitutional violation.  *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).  Section 3626(a) "operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators—no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum."  *Gilmore v. People of the State of Cal.,* 220 F.3d 987, 999 (9th Cir. 2000).  "[O]ne of the purposes of the Act was to restrict severely the intrusion of the judiciary in the operation of prisons."  *Plata v. Schwarzenegger*, 603 F.3d 1088, 1095 (9th Cir. 2010) (citing *Gilmore*, 220 F.3d at 996-97).

Here, the prospective injunctive relief that plaintiffs seek does not comply with the PLRA's "narrowly drawn" requirement.  Instead, plaintiffs are seeking blanket prohibitions against the use of solitary confinement and ask the Court to order that defendants follow the law. But a general injunction that defendants must "follow the law" (which they already must do) is not appropriate in the absence of an imminent or ongoing constitutional violation, which is not alleged in this case.  Thus, the Court should dismiss plaintiffs' claims for injunctive relief.

Page 4 -   DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

**C.    Plaintiffs have not pleaded the facts necessary to support their constitutional claims.**

**1.    Defendants' alleged conduct does not implicate plaintiffs' due process rights.**

Neither the 68 days that Mr. Mora-Contreras alleges he spent in administrative segregation nor the limited time that Mr. Staggs alleges that he spent in administrative segregation (a one week stay in October of 2016 and "from November to January 2017") are deprivations that amount to a "protected liberty interest" necessary for a due process claim. Constitutional due process protections attach only to instances "where the deprivation implicates a protected liberty interest—that is, where the conditions of confinement impose an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Brown v. ODOC*, 751 F.3d 983, 987 (9th Cir. 2014) (quoting *Sandin v. Connor*, 515 U.S. 472, 484 (1995)). In determining whether a condition is "significant and atypical," the Court considers "'1) whether the challenged condition mirrored those conditions imposed upon inmates in administrative segregation and protective custody, and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence.'" *Id*. (citing *Ramirez v. Galaza,* 334 F.3d 850, 861 (9th Cir. 2003)). Here, plaintiffs' due process claims are rooted in limited time spent in administrative segregation.

Neither the Ninth Circuit nor the United States Supreme Court has ever held that a 68-day (in the case of Mr. Mora-Contreras) or a 90-day (Mr. Staggs alleges that he was kept in administrative segregation from "November to January 2017" (Am. Compl., Dkt. #1, ¶ 48)) stay in administrative segregation, standing alone, amounts to a "significant and atypical hardship." The Ninth Circuit has explicitly held that time in a segregation unit does not amount to a violation of a protected liberty interest. *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) (placement in a segregation unit does not implicate liberty interest); *Resnick v. Hayes*, 213 F.3d 443 (9th Cir. 2000) (prisoner has no cognizable due process claim because he has no liberty interest in being free from disciplinary segregation).

Page 5 -    DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Plaintiffs have not alleged facts that would plausibly demonstrate that it would have been clear to any defendant in this case that an up to 90-day placement in administrative segregation amounted to a significant and atypical hardship.  This is not the type of "indefinite detention" that the Supreme Court has found to give rise to a protected liberty interest.  *Wilkinson v. Austin,* 545 U.S. 209, 210–11 (2005) (inmates remained indefinitely in isolated cells for twenty-three hours each day with virtually no human contact).  This is also not the type of indefinite detention that the Ninth Circuit has found "significant and atypical."  *Brown,* 751 F.3d at 988 (27 months segregated housing).  This case is more akin to a finite placement in segregated housing, which does not generally constitute a significant and atypical hardship.  *Smith v. Powell*, Case No. 2:14-cv-01725-SB, 2016 WL 1183086 (D. Or. March 28, 2016) (120-day placement in DSU).

The Court has noted that there is no bright-line rule as to when the duration of segregation invokes a liberty interest.  See *LaFleur v. Nooth*, 2014 WL 1236138, at *4-5 (D. Or., Mar. 25, 2014) (collecting cases, and noting that placements from 40 days to 2.5 years had been found to not be "significant and atypical").  Since *LaFleur*, the Ninth Circuit clarified in *Brown* that a 27-month stay in segregation invokes such an interest.  *See Brown,* 751 F.3d at 988.  The Court recently stated that "[l]iberally read, *Brown* may be interpreted to implicate a liberty interest any time that an inmate faces '***lengthy confinement without meaningful review***' in a housing unit with conditions which differ significantly from those imposed in whatever housing unit constitutes the 'appropriate baseline.'"  *Evans v. Deacon*, Case No. 3:11-cv-00272-ST, 2015 WL 248412, *13 (D. Or., Jan. 20, 2015) (emphasis added) (quoting *Brown*, 751 F.3d at 988), *rev'd in part on other grounds*, 687 Fed. Appx. 589 (9th Cir. 2017).[2]  The Ninth Circuit has not provided further guidance other than to state that 27 months is significant and atypical under any plausible baseline.  And this Court has already held that a 120-day DSU sanction does not implicate the due process clause.  *Smith,* 2016 WL 1183086, at *2.

---

[2] In *Evans*, the plaintiff spent 148 days in segregation in 2010—the detention did not impact the plaintiff's sentence and predated *Brown*.  2015 WL 248412 at *13.

Page 6 -    DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

Defendants acknowledge that the length of time an inmate spends in segregation is not the only factor that the Court must consider. Even a 25-day placement in administrative segregation can be "significant and atypical" based on the particular facts of the case. *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) (wheelchair-bound inmate placed in segregation without the ability to perform certain activities of daily living). But plaintiffs have not alleged any facts that would plausibly demonstrate that their limited time in administrative segregation sanction was a "novel situation" like that in *Serrano*. *Id.* Plaintiffs' alleged losses in this case are not a significant and atypical hardship.

In sum, the Court should dismiss plaintiffs' due process claims, because plaintiffs have not invoked any protected liberty interest as is required to state such a claim. The Ninth Circuit has never suggested—much less held—that an ordinary 68-day or 90-day stay in administrative segregation that did not impact an inmate's sentence could amount to a significant and atypical hardship.[3]

### 2. Defendants' alleged conduct does not implicate plaintiffs' right to be free from cruel and unusual punishment.

Plaintiffs allege that they were subjected to cruel and unusual punishment in the form of administrative segregation placements, transfers to other ODOC facilities, and fabricated evidence (allegations that are rooted in investigative tactics that were allegedly aimed at third parties who are not before the Court). (Am. Compl., Dkt. #27, ¶ 65). Plaintiffs' Eighth Amendment claims fail as a matter of law because (a) the conditions about which they complain do not amount to cruel and unusual punishment; and (b) their emotional distress damages are barred by the PLRA.

---

[3] To the extent that plaintiffs' due process claims are rooted in prison transfers (it is unclear), their claims fail as a matter of law because the Due Process Clause does not protect a duly convicted prisoner against transfer from one institution to another, even if the prisoner is transferred to an institution with more severe rules. *Meachum v. Fano*, 427 U.S. 215, 225 (1976); *Olim v. Wakinekona*, 461 U.S. 238, 248 (1983) ("[A]n interstate prison transfer . . . does not deprive an inmate of any liberty interest protected by the Due Process Clause in and of itself."). Additionally, "the Due Process Clause does not impose a nationwide rule mandating transfer hearings." *Meachum*, 427 U.S. at 228.

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

**a.** **Conditions did not amount to cruel and unusual punishment.**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. CONST. amend VIII. "The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones, and it is now settled that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal citations omitted). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Id.* at 828. A prison official violates the Eighth Amendment when two requirements are met. *Id.* at 834. "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). And "The second requirement follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Id.* (quoting *Wilson*, 501 U.S. at 297).

Here, plaintiffs' complaints about being housed in administrative segregation and about their transfers to other ODOC prisons do not implicate the Eighth Amendment. Being housed in administrative segregation does not constitute cruel and unusual punishment. The Ninth Circuit has held that the mere placement of a prisoner in administrative segregation or isolation does not violate the Eighth Amendment. *Salstrom v. Sumner*, 959 F.2d 241, at *1 (9th Cir. 1992); see also *Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995) (administrative segregation is within the terms of confinement ordinarily contemplated by a sentence, and does not violate the Eighth Amendment despite the accompanying restrictions on, among other things, exercise and recreation). Likewise, plaintiffs also do not have a constitutional right to avoid being transferred among prisons. *Sams v. Thomas*, Case No. 11-333-AC, 2011 WL 2457407, at *3 (D. Or. May 12, 2011) ("[T]he mere fact of a prison transfer, standing alone, does not constitute cruel and unusual punishment in violation of the Eighth Amendment.").

Because plaintiffs have failed to allege objectively, sufficiently serious deprivations, their Eighth Amendment claims fail as a matter of law and must be dismissed.

Page 8 -   DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT
SMV/bl2/9194157-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

**b.    Emotional distress damages are barred by the PLRA.**

The PLRA states:  "[n]o Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e).  "[F]or all claims to which it applies, 42 U.S.C. § 1997e(e) requires a prior showing of physical injury that need not be significant, but must be more than *de minimus*."  *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002).

Here, plaintiffs cannot recover damages for alleged mental or emotional injuries related to their Eighth Amendment claims, because they do not allege any constitutionally significant physical injuries caused by defendants' alleged conduct.

**3.    Defendants' alleged conduct does not implicate plaintiffs' right to equal protection.**

"The Equal Protection Clause requires the State to treat all similarly situated people equally." *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008) (citation omitted).  A plaintiff can establish an equal protection claim in two ways:  (1) by showing that a defendant has discriminated against him on the basis of his membership in a protected class, *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001); or (2) by showing that a defendant has intentionally treated him differently from similarly situated individuals without a legitimate state purpose for doing so, *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Under the first theory, a plaintiff must show that the defendant's actions were a result of the plaintiff's membership in a protected class, such as race. *Thorton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005).  Plaintiffs are members of a protected class.  (Am. Compl., Dkt. #27, ¶¶ 27, 44).  But they have not alleged any plausible facts to suggest that they were discriminated against because of their membership in a protected class.

Under the second theory, a plaintiff must allege that:  (1) he is a member of an identifiable class; (2) he was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment.  *Village of Willowbrook*, 528 U.S. at 564.

Page 9 -    DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

If an equal protection claim is based upon the defendant's selective enforcement of a valid law or rule, a plaintiff must show that the selective enforcement is based upon an "impermissible motive." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995).

Here, plaintiffs do not allege any facts that demonstrate that they were treated differently from others similarly situated without a rational basis for the different treatment. Plaintiffs acknowledge in their complaint that "Around April 2016, . . some inmates died from an influx of drugs into ODOC," and ODOC's Special Investigations Unit (SIU) and Security Threat Management Team (STM) were investigating threats to prison safety. (Am. Compl., Dkt. #27, ¶ 13). Likewise, plaintiffs allege that "In the summer of 2016, a riot allegedly erupted at Oregon State Penitentiary," and "Upon information and belief, SIU/STM wanted to hold inmates 'accountable' for the drug influx and riot and attempted to levy cases against inmates whom the institution distrusted or whom challenged their notion of authority." (*Id.* at ¶¶ 14-15).

In other words, plaintiffs acknowledge that SIU and STM were investigating serious threats to prison safety and security. And because there are no facts alleged from which any factfinder could conclude that they were treated differently from others who were similarly situated, they fail to state an equal protection claim as a matter of law.

> **4.    Defendants' alleged conduct does not implicate plaintiffs' First Amendment rights.**

> **a.    Mr. Mora-Contreras's First Amendment claims.**

Mr. Mora-Contreras alleges that Defendant OSP Security STM Correctional Lieutenant Doug Yancey offered another inmate—who is not a plaintiff in this lawsuit—a placement "in general population with 'privileges'" if he "provided incriminating evidence against Mr. Mora-Contreras." (Am. Compl., Dkt. #27, ¶¶ 33-34). Mr. Mora-Contreras further alleges that Lieutenant Yancey asked for "incriminating information about the . . . riot" and he (Mr. Mora-Contreras) declined to give it to him. (*Id.* at ¶ 39). Mr. Mora-Contreras alleges that he was transferred to TRCI because he did not cooperate with the investigation. (*Id.* at ¶ 40).

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

Mr. Mora-Contreras alleges that Defendant Yancey "intentionally violated [his] rights to be [free from] making compelled speech or being retaliated against for giving false testimony." (*Id.* at ¶ 77).

Mr. Mora-Contreras's First Amendment claim fails as a matter of law.  To the extent they are rooted in Lieutenant Yancey's incentives to other inmates to cooperate in an investigation, Mr. Mora-Contreras does not have standing to enforce the rights of others.  And to the extent they are rooted in Lieutenant Yancey's request that Mr. Mora-Contreras provide incriminating information about a prison riot, neither the United States Supreme Court nor the Ninth Circuit nor this Court have held that there is a constitutionally protected right to refuse to be an informant.  To the contrary, the Ninth Circuit in *United States v. Paguio*, 114 F.3d 928, 930 (9th Cir. 1980), held that "[t]here is no constitutional right not to 'snitch.'"  In *Dixon v. Gonzalez*, an Eastern District of California case, a prisoner alleged that he was moved to secured housing in retaliation for his perceived refusal to cooperate with an investigation.  Case No. 1:09–cv–00172–OWW DLB PC, 2009 WL 3416005, at *3 (E.D. Cal. Oct. 21, 2009).  The Court noted that "'Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.'"  *Id.*, quoting *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).  Applying that framework, the Court concluded that there were "no facts alleged indicating that Plaintiff was engaged in any protected conduct."  *Id.*  Here, as in *Dixon*, Mr. Mora-Contreras has not alleged facts indicating he was engaged in any protected conduct.

### b.    Mr. Staggs's First Amendment claims.

Like Mr. Mora-Contreras, Mr. Staggs alleges that Defendant Yancey "intentionally violated [his] rights to be [free from] making compelled speech or being retaliated against for giving false testimony."  (Am. Compl., Dkt. # 27, ¶ 77).

Page 11 -  DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT
SMV/bl2/9194157-v1

Mr. Staggs alleges that Lieutenant Yancey "bribed inmates, with favors, drink tickets, and wrist watches, to falsely inform on Mr. Staggs." (Am. Compl., Dkt. #27, ¶ 50).

Mr. Staggs's First Amendment claims fail as a matter of law because Mr. Staggs does not allege that he was ever compelled to speak, let alone retaliated against because of his speech (or lack thereof). Mr. Staggs's allegations related to speech are rooted in his allegations that Lieutenant Yancey offered other inmates—who are not parties to this lawsuit—incentives to cooperate in his investigation. Mr. Staggs does not have standing to enforce the rights of others, so his First Amendment claims fail as a matter of law and must be dismissed.

**D.    Plaintiffs have not pleaded that Defendants Director of ODOC Colette Peters, Inspector Meghan Leddy,  Correctional Officer Zachary Gould, Inspector General Craig Prins, or Hearings Officer Jeremy Nofziger personally participated in any alleged constitutional violations.**

To establish a Section 1983 claim against an individual defendant, a plaintiff must plead personal participation by the defendant. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution."). State officials cannot be held liable under 42 U.S.C. § 1983 on a *respondeat superior* theory. *Id.*; *Monell v. Dep't of Soc. Serv.s of City of New York*, 436 U.S. 658, 691-694 (1978).

Here, plaintiffs have not alleged what Defendants Director of ODOC Colette Peters, Inspector Meghan Leddy, Correctional Officer Zachary Gould, Inspector General Craig Prins, or Hearings Officer Jeremy Nofziger personally did to violate their constitutional rights.[4] Plaintiffs make no allegations detailing any personal involvement on the part of any of these defendants, and it appears they are instead being sued in their supervisory capacities.

---

[4] Defendant Office of the Inspector General Inspector Jerry Plante also raises this defense with regard to Mr. Mora-Contreras's claims. The only substantive allegation against Inspector Plante is that he "conducted the investigation, and provided the 'factual' basis to administratively prosecute Mr. Staggs." (Am. Compl., Dkt. # 27, ¶ 47). Mr. Mora-Contreras does not allege that Inspector Plante was personally involved in any conduct implicating Mr. Mora-Contreras's constitutional rights.

Page 12 -  DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

To the extent that plaintiffs are suing these defendants for other defendants' actions, state officials cannot be held liable under 42 U.S.C. § 1983 on a *respondeat superior* theory of liability. *Id.* See also, *King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir. 1987). A supervisor may face liability under Section 1983 only if there was either: (1) personal involvement by the supervisor in the constitutional deprivation; or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001). Because plaintiffs allege no facts to support personal involvement or wrongful conduct against Defendants Director Peters, Inspector Leddy, Correctional Officer Gould, Inspector General Prins, Hearings Officer Nofziger, or (as to Mr. Mora-Contreras's claims) Inspector Plante, plaintiffs' claims against those defendants must be dismissed.

### E.    Defendants are entitled to qualified immunity from damages.

An official should be denied qualified immunity from money damages for alleged constitutional violations only when "[t]he contours of the right are sufficiently clear that a reasonable official would understand that what [s]he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Applying the *Anderson* test, the Ninth Circuit articulated a two-part analysis for determining officials' qualified immunity: "(1) Was the law governing the official's conduct clearly established? (2) Under that law, could a reasonable officer have believed the conduct was lawful?" *Neely v. Feinstein,* 50 F.3d 1502, 1507 (1995) (citing *Act Up!/Portland v. Bagley*, 988 F.2d 868, 871 (9th Cir. 1993)).

Qualified immunity is immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985). Consequently, the Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation. See, e.g*., Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*per curiam*); *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Page 13 -  DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT
SMV/bl2/9194157-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

Here, even if a constitutional violation occurred, a reasonable prison official would have believed that the procedures employed in this case, all in accordance with ODOC policy, were lawful.  See *Neely v. Feinstein,* 50 F.3d 1502, 1507 (1995).  Plaintiffs have not alleged what Defendants Director Peters, Inspector Leddy, Correctional Officer Gould, Inspector General Prins, or Hearings Officer Nofziger personally did to violate their constitutional rights, and they could not have known that their conduct—which is not made clear in plaintiffs' amended complaint—would violate plaintiffs' constitutional rights.  Likewise, Defendants Lieutenant Yancey and Inspector Plante, who were investigating serious prison security threats, could not have known that their conduct would violate plaintiffs' constitutional rights.  Plaintiffs do not have a constitutionally-protected interest in remaining free from administrative segregation under the facts alleged, nor do they have a right to be housed in a prison of their choosing.

Because defendants in this case would have no reason to know that their conduct was unlawful, they are entitled to qualified immunity from plaintiffs' constitutional claims for money damages.

## III.    Conclusion.

For the foregoing reasons, the Court should dismiss plaintiffs' complaint for failure to state a claim for relief.

DATED November <u>6</u>, 2018.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General


    *s/ Shannon M. Vincent*
SHANNON M. VINCENT #054700
Senior Assistant Attorney General
Trial Attorney
Tel (503) 947-4700
Fax (503) 947-4791
Shannon.M.Vincent@doj.state.or.us
Of Attorneys for Defendants

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791