**Juan C. Chavez**, OSB #136428
Email: juan@chavezlawpdx.com
PO Box 5248
Portland, OR 97208
Telephone: 503-944-2270 ext. 212
Facsimile: 503-715-5763
**Crystal S. Maloney**, OSB #164327
Email: crystal.s.maloney@gmail.com
333 SW Taylor St., Ste. 300
Portland, OR 97204

      Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| RAFAEL MORA-CONTRERAS; and SHANE STAGGS,<br><br>Plaintiffs,<br><br>    vs.<br><br>COLETTE PETERS; DOUG YANCEY; MEGHAN LEDDY; ZACHARY GOULD; CRAIG PRINS; JERRY PLANTE; JEREMY NOFZIGER; and JOHN DOES 1-5,<br><br>Defendants. | Case No. 6:18-cv-00678-SB<br><br><br>PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS<br><br>(Oral Argument Requested) |

COMES NOW, by and through their counsels, Juan C. Chavez and Crystal S. Maloney,

Plaintiffs Rafael Mora-Contreras and Shane Staggs submit this Brief in Opposition to

Defendants' Motion to Dismiss.

## I. Introduction

    Plaintiffs will first address the issues regarding injunctive and declaratory relief. Next,

Plaintiffs will speak to the degree qualified immunity can be adjudged at this early juncture in

litigation. Third, Plaintiffs will illustrate how their *Amended Complaint* properly pleads clearly-established constitutional norms which were violated by Defendants' conduct. Lastly, Plaintiffs will describe how each Defendant personally participated in the constitutional violations alleged.

## II. Motion to Dismiss Standard

A complaint may survive a Rule 12(b)(6) motion to dismiss for failure to state a claim if it contains "enough facts to state a claim to relief that is plausible on its face." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1034 (9th Cir. 2010) (*quoting Ascroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). "On a motion to dismiss for failure to state a claim, the court must construe the complaint in the light most favorable to the plaintiff, taking all her allegations as true and drawing all reasonable inferences from the complaint in her favor." *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005).

The notice pleading standard of Federal Rule of Civil Procedure 8(a)(2), which merely requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a) "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). "[G]enerally the scope of review on a motion to dismiss for failure to state a claim is limited to the Complaint." *Daniels-Hall v National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

### III. Argument

### A. Plaintiffs' Claims for Injunctive and Declaratory Should Not Be Dismissed

1. Mr. Mora-Contreras's claim for declaratory and injunctive relief is not moot

Mr. Mora-Contreras filed this claim while still incarcerated at the Oregon State Correctional Institution (OSCI). Mr. Mora-Contreras acknowledges that the immediacy of the harm has diminished when he was transferred to the Washington County Jail. While he certainly does not hope for such an outcome, he still stands a chance, more than an average member of the public, to be later subjected to solitary confinement at an Oregon Department of Corrections facility if he is not successful in his case (the same case he was incarcerated for at OSCI).

Given this possibility, if this Court dismisses Mr. Mora-Contreras's claim for injunctive relief, it should do so without prejudice, and provide leave to amend the Complaint to rejoin this claim if he returns to ODOC's custody.

However, on the issue of declaratory relief, the harm, and the potential for such harm, has not dissipated for Mr. Mora-Contreras. He still has an active case in controversy regarding these very important constitutional rights. While Mr. Mora-Contreras has been released from ODOC's custody, he remains incarcerated, with the threat of further incarceration. If convicted, he will be subject to ODOC's alleged unconstitutional practices.

Mr. Mora-Contreras's only redress, without injunctive relief, are damages and declaratory relief. While this Court may not have the ability to enjoin a party into not violating Mr. Mora-Contreras's rights, it can notice the Defendants, when fully briefed and presented facts

post-discovery, that Mr. Mora-Contreras's rights were violated, and appropriately respond in the future. Additionally, as described below, *infra* Section III.B.2., because Federal law requires of Judges to interpret the law, it should do so here to promote "the development of constitutional precedent." *Pearson v. Callahan*, 555 US 223, 236 (2009).

    2. The injunctive relief Plaintiffs seek is proportionate to the ongoing, unconstitutional violation present.

    First, nothing in the Prison Litigation Reform Act (PLRA) limits this Court's authority to issue an injunction to cases involving current and ongoing violations of constitutional rights. Rather, the PLRA requires only that the scope of an injunction be necessary, narrowly drawn, and the least intrusive means of protecting Plaintiffs' constitutional rights—requirements that Plaintiffs' requested injunction easily meets here. 18 U.S. Code § 3626. The PLRA thus does not preclude this Court from granting the requested relief, so long as Plaintiffs ultimately demonstrate the depth of the constitutional right needing redress.

    For purposes of granting an injunction in the first instance, therefore, the PLRA leaves intact the fundamental equitable principle that an injunction is appropriate where a substantial risk of future irreparable harm is shown. *See Thomas v. Bryant*, 614 F.3d 1288, 1320 (11th Cir. 2000) ("[T]here is no indication in the PLRA, its legislative history, or the case law to suggest that the 'current and ongoing' requirement was intended by Congress to amend the well-established law that injunctive relief is available in the first instance . . . to prevent future harm."); *see also Miller v. French*, 530 U.S. 327, 340 (2000) (courts "should not construe a statute to displace courts' traditional equitable authority absent the clearest command or an inescapable inference to the contrary" (internal citations and quotation marks omitted)). If the Plaintiffs demonstrate the potential for this future harm, then the injunctive relief sought is appropriate.

Second, concluding that the relief sought by Plaintiffs violates the PLRA would necessarily require the Court to resolve the factual allegations in the moving parties' favor, which it cannot do. Thus, this Court cannot properly adjudicate this issue without further presentation of evidence.

## B. Qualified Immunity

### 1. Preliminary Statement Regarding the Untenability of Qualified Immunity

Plaintiff respectfully submits that the defense of qualified immunity is, and should be held to be, a legally impermissible defense except as applied to state actors protected by immunity in 1871 when §1983 was enacted. Defendants cannot show that this would include correctional officers. As applied to persons not immunized under common or statutory law in 1871, the defense of qualified immunity is untethered to any cognizable legal mandate and is flatly in derogation of the plain meaning and language of 42 U.S.C. §1983. *See Ziglar v. Abbasi*, 137 S.Ct. 1843, 1870-72 (2017) (Thomas, J., concurring); *see also Crawford-El v. Britton*, 523 U.S. 574, 611 (1998) (Scalia, J., dissenting) ("As I have observed earlier, our treatment of qualified immunity under 42 U.S.C. § 1983 has not purported to be faithful to the common-law immunities that existed when § 1983 was enacted, and that the statute presumably intended to subsume.") An analysis of the baselessness and disutility of the current judge-created qualified immunity defense appears at Baude, *Is Qualified Immunity Unlawful*, 106 Cal. L. Rev. 101 (forthcoming 2018); *see also* Reinhardt, *The Demise of Habeas Corpus and the Rise of Qualified Immunity: The Court's Ever Increasing Limitations on the Development and Enforcement of Constitutional Rights and Some Particularly Unfortunate Consequences*, 113 Mich. L. Rev. 1219, 1244–1250 (2015).

Additionally, qualified immunity cannot be justified as an alleviation of burdensome litigation. As a Yale Law Journal study explained:

> Although qualified immunity terminated only 3.9% of the 979 cases in my dataset in which qualified immunity could be raised, the defense was in fact raised by defendants in more than 37% of these cases--and was sometimes raised multiple times, at the motion to dismiss stage, at summary judgment, and through interlocutory appeals. Each time qualified immunity is raised, it must be researched, briefed, and argued by the parties and decided by the judge…
>
> [I]n the five districts in my study, just 8.6% of qualified immunity motions brought by defendants in my docket dataset resulted in case dismissals. The remaining 91.4% of qualified immunity motions brought by defendants required the parties and judges to dedicate time and resources to briefing, arguing, and deciding the motions without shielding defendants from discovery and trial.

Joanna C. Schwartz, *How Qualified Immunity Fails*, 127 Yale L.J. 2, 60–61 (2017).

Plaintiff recognizes that this court may consider itself bound by law assuming and adjudicating the availability of qualified immunity to correctional officers violating federal or constitutional mandates that are not "clearly established." Nevertheless, he presents this objection in support of an effort to modify existing law, thereby preserving his opposition to Defendants invocation of this defense, which opposition may be subject to further adjudication within the federal judiciary. Having stated this objection, Plaintiff proceeds to address the qualified immunity defense on the merits.

### 2. Defendants Should Not Receive Qualified Immunity, and Should Answer to a Jury

Qualified immunity protects "government officials performing discretionary functions.. from liability for civil damages..." *Harlow v. Fitzgerald*, 457 US 800, 818 (1982). Qualified immunity calls for a two-pronged analysis: 1) whether the rights and law establish that a

protected right was violated; and 2) whether the rights were reasonably known at the time the defendant acted. *Pearson v. Callahan*, 555 US 223, 234 (2009).

Qualified immunity does not protect government officials who violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 US 800, 818 (1982). It is not a requirement for the action to have been previously held unlawful; rather, for the immunity to be inapplicable, a party need only show that in light of pre-existing law the unlawfulness is apparent. *Hope v. Pelzar*, 536 US 730, 739 (2002); *see also Clement v. Gomez*, 298 F3d 898, 906 (9th Cir 2002) (the focus is on whether the status of the law gave "fair warning" to officials that their conduct was unconstitutional.). Caselaw "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S.Ct. 548, 551 (2017) (slip op., at 6) (internal quotation marks omitted). "[G]eneral statements of the law are not inherently incapable of giving fair and clear warning to officers." *Id.* at 552 (internal quotation marks omitted). "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U. S. 730, 741 (2002).

When adjudging qualified immunity, it is crucial for courts to draw "inferences in favor of the nonmovant, even when… a court decides only the clearly-established prong of the standard." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014). Accordingly, courts must take care not to define a case's "context" in a manner that imports genuinely disputed factual propositions. *Id.*; *See Brosseau*, supra, at 195, 198, 125 S.Ct. 596 (inquiring as to whether conduct violated clearly established law "in light of the specific context of the case" and construing "facts… in a light most favorable to" the nonmovant).

Lastly, post-*Pearson v. Callahan*, the "rigid order" of reviewing cases by first analyzing whether there was a violation of the right, then examining whether that right had been "clearly established" has been disbanded, *Pearson*, 555 U.S. at 235, Plaintiffs requests that the Court to answer the first question posed by *Pearson*, and determine whether a constitutional right had been violated under the given circumstance. While abandoning the mandatory nature of two-step analysis, the Court continued to recognized that the approach can be beneficial in promoting "the development of constitutional precedent[,]" and "is especially valuable with respect to questions that do not frequently arise in cases in which a qualified immunity defense is unavailable." *Id.* at 236.

Because the analysis as to whether Plaintiffs' claims were properly plead, and whether or not they clearly established or violated, Plaintiff will discuss each claim in tandem with its clearly established case law.

**C. Plaintiffs have provided adequate notice of the clearly established constitutional rights which Defendants violated.**

As a threshold issue, Defendants misconstrue the premises of Plaintiffs' claims, and the factual allegations underpinning them. As plead, because the Court must view the allegations in Plaintiffs' Amended Complaint as true, and in their favor, Plaintiffs easily meet the burden set to state a claim upon which relief can be granted.

<u>1. Plaintiffs' Amended Complaint gives adequate notice that Defendants violated their rights under the Due Process clause.</u>

Plaintiffs' Due Process claim alleges the following:

> 58.    In taking the actions described above, including but not limited to using solitary confinement, fabricating evidence, transferring inmates to far away facilities as retaliation, coercing false statements from informants, and giving and validating prolonged arbitrary solitary detention lengths without meaningful

> process, Defendants intentionally violated Plaintiffs' rights to be
> free [of] unlawful deprivation of due process.

*Am. Comp.* ¶ 58, Dkt. 27.

Plaintiffs allege that were arbitrarily deprived due process when Defendants used false, coerced information to place them in solitary confinement. The process by which they were placed in solitary confinement did not meet constitutional muster. Lastly, Plaintiffs had a right to not be placed in atypical and significantly tortuous condition of solitary confinement.

    a. <u>Plaintiffs had a right to not have fabricated evidence used against them to justify an atypical harm like solitary confinement</u>

Both Mr. Mora-Contreras and Mr. Staggs had false information used against them to justify their solitary confinement, and disciplinary hearings.

The analysis of use of false or fabricated evidence flows through *Devereaux v. Abbey*, which found that "there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir. 2001). The Court derived this right from the Supreme Court's holding in *Pyle v. Kansas*, 317 U.S. 213, 216, 63 S.Ct. 177, 87 L.Ed. 214 (1942), that "the knowing use by the prosecution of perjured testimony in order to secure a criminal conviction violates the Constitution." *Devereaux*, 263 F.3d at 1075. This right also extends to civil investigations. *Costanich v. Department of Social and Health Services*, 627 F.3d 1101 (9th Cir. 2010) (relating to civil child abuse hearings). To support a *Devereaux* deliberate-fabrication-of-evidence claim, a plaintiff must show that:

> (1) Defendants continued their investigation of [plaintiff] despite
> the fact that they knew or should have known that he was innocent;
> or (2) Defendants used investigative techniques that were so
> coercive and abusive that they knew or should have known that
> those techniques would yield false information.

*Id*. at 1076.

To this point, Mr. Mora-Contreras alleges that Defendants Yancey, Leddy and Gould, and Mr. Staggs alleges that Defendants Yancey and Plante fabricated evidence through coercion and bribery, and used these false claims against them. *Am. Comp.* ¶ 33-34, 49-50. The facts articulated give ample notice to these Defendants as to the reason why they are being sued, and the clear legal basis on which Plaintiffs' claims rest. Viewing the facts as true, and in Plaintiffs' favor, Plaintiffs cannot be dismissed on this ground.

> **b.** Plaintiffs had a liberty interest in not arbitrarily being placed in solitary confinement

Next, Mr. Mora-Contreras alleges that Defendants Yancey, Nofziger and Gould, and Mr. Staggs alleges that Defendants Yancey and Plante placed them in solitary confinement with threadbare justifications that violated their Due Process rights. "[C]ertain changes in conditions may be so severe or so different from ordinary conditions of confinement that, whether or not state law gives state authorities broad discretionary power to impose them, the state authorities may not do so 'without complying with minimum requirements of due process.'" *Sandin v. Conner*, 515 U.S. 472, 483 (1995); see also *Vitek v. Jones*, 445 U. S. 480, 491-494 (1980) ("involuntary commitment to a mental hospital"); *Washington v. Harper*, 494 U. S. 210, 221-222 (1990) ("unwanted administration of antipsychotic drugs"). Deprivations that are "less severe or more closely related to the original terms of confinement nonetheless will amount to deprivations of procedurally protected liberty, provided that state law (including prison regulations) narrowly cabins the legal power of authorities to impose the deprivation (thereby giving the inmate a kind of *right to avoid* it)." *Sandin*, 515 U.S. at 483 (emphasis added); *See Hewitt v. Helms*, 459 U. S. 460, 471-472 (1983) (liberty interest created by regulations "requiring ... that administrative segregation will not occur absent specified substantive predicates"). Ultimately, an inmate has no

protected liberty interest in his minimum custody status or other privileges absent an "atypical, significant deprivation." *Sandin*, 515 U.S. at 486. For more discussion on "atypical, significant deprivation," see *infra* Section III.C.1.c.

In the prison disciplinary context, procedural due process is satisfied if the inmate receives: (1) written notice of the charges; (2) a brief period of time after the notice to allow for preparation; (3) a written statement of the evidence relied on and the reasons for the disciplinary action; (4) a limited right to call witnesses and present documentary evidence; and (5) if the inmate is illiterate, allowance to seek the assistance of a fellow inmate or prison staff. *Wolff v. McDonnell*, 418 U.S. 539, 563–70 (1974).

Both Mr. Mora-Contreras and Mr. Staggs were placed in solitary confinement while awaiting disciplinary hearings. Both had perfunctory hearings which found "sufficient evidence" to continuously detain them. The "sufficient evidence" were notices from an Special Investigation Unit (SIU) Investigator requesting further detention. In Mr. Mora-Contreras's case, Defendant Yancey told him to corroborate incriminating allegations against other inmates, even if the statements were not true. Had he corroborated these facts, he would have been released from administrative segregation early. Eventually the rule violation allegation was dismissed after a hearing, following intervention of an attorney.

Mr. Staggs did not have an attorney, and waited for his hearing. His time in solitary confinement was also affirmed because of an "ongoing SIU investigation," despite the investigating officer being on vacation. Mr. Staggs was found to have violated a rule, but later learned that another inmate whom he never had met made the incriminating and dispositive allegation against him. This inmate did not learn about "his allegation" against Mr. Staggs until Mr. Staggs told him about it. Defendant Yancey had fabricated this evidence.

It strains and breaks Due Process to use a "neutral" process designed to "protect the integrity of an investigation" to place inmates in administrative segregation on nothing more than the word of an SIU whom fabricated evidence. Defendants had a duty to "a written statement of the evidence relied on and the reasons for the disciplinary action"; however, neither Plaintiff learned of the true nature of the allegations against them until later. Neither Plaintiff was afforded the "right to avoid" such "atypical and significant" punishment as solitary confinement. *Sandin*, 515 U.S. at 483. Here, the only available avenue to "avoid" administrative segregation was to provide potentially false information against other inmates, thus placing Mr. Staggs and Mr. Mora-Contreras into potentially even more danger. For these reasons, Plaintiffs have adequately provided notice of a Due Process violation to the Defendants.

### c.   Solitary confinement is an atypical and significant hardship

Once more, the Defendants ask that this Court enter judgment by viewing the facts more favorably, despite specific allegations made by Mr. Mora-Contreras and Mr. Staggs putting into question the "atypicality" and "significance" of the hardship derived from solitary confinement.

In *Sandin*, the Supreme Court held that a prisoner's liberty interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483–84 (internal citations omitted). As the Supreme Court observed in *Wilkinson*, Sandin made clear that the "touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions

themselves 'in relation to the ordinary incidents of prison life.'" *Wilkinson*, 545 U.S. at 223 (quoting *Sandin*, 515 U.S. at 484).

Turning to the nature of the condition of the confinement, Mr. Mora-Contreras and Mr. Staggs both were faced with "atypical" and "significant" hardships contrary to normal prison life. As alleged in their Amended Complaint, "[t]he growing body of evidence being developed regarding solitary confinement demonstrates the harm it creates, including severe confusional, paranoid, and hallucinatory features, as well intense agitation and random, impulsive, often self-directed violence—even in persons with no prior mental illness." *Am. Comp.* Par 19. Both Plaintiffs reported severe distress, anxiety, sleeplessness, and tension. Mr. Mora-Contreras alleges he had auditory hallucinations, and severe weight loss. Mr. Mora-Contreras's anxiety persists even after release from solitary confinement, and lives in fear of being placed back into solitary confinement.

Mr. Staggs alleges that persons in solitary confinement are also treated to indignities, such as cell-extractions where loud rock music was played, pepper-spray filled the air of cells not being extracted, and other inmates screamed in pain.

The Ninth Circuit's own jurisprudence acknowledges the truth that prolonged "solitary confinement for over twenty-three hours each day with almost no interpersonal contact, and denied [an inmate] most privileges afforded inmates in the general population" does, while not entirely on its own, implicate the Due Process clause. *Brown v. Oregon Dept. of Corrections*, 751 F.3d 983, 988 (9th Cir. 2014). Plaintiffs did not need to be in solitary confinement for 27 months, as the Plaintiff in *Brown* had, to feel the negative health effects of solitary confinement. Appealing to stale cases such as *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) and *Resnick*

*v. Hayes*, 213 F.3d 443 (9th Cir. 2000) can no longer avail State Departments of Corrections to deference on a clearly harmful practice.

As plead, Plaintiffs have adequately provided notice of a Due Process violation to the Defendants.

### 2. Defendants' conduct implicates plaintiffs' right to be free from cruel and unusual punishment.

In their Amended Complaint, Plaintiffs allege that:

> 65.    In taking the actions described above, including but not limited to using solitary confinement, fabricating evidence, transferring inmates to far away facilities as retaliation, coercing false statements from informants, and giving and validating prolonged arbitrary solitary detention lengths without meaningful process, Defendants intentionally violated Plaintiffs' rights to be cruel and unusual punishment through use of their shocking and barbarous practices, disproportionately penalizing the prisoners given the alleged facts above.

*Am. Comp.* ¶ 65.

The Eighth Amendment imposes certain duties on prison officials: (1) to provide humane conditions of confinement; (2) to ensure that inmates receive adequate food, clothing, shelter and medical care; and (3) to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). In *Farmer*, the Supreme Court held an Eighth Amendment claim based on deliberate indifference must satisfy both an objective and a subjective component test. *Farmer*, 511 U.S. at 834. A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837; *accord Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002)

The objective prong is "contextual and responsive to 'contemporary standards of decency.'" *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). To be deemed "sufficiently serious," defendants' conduct must have resulted "in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (discussing cases where conditions were found unconstitutional "because they resulted in unquestioned and serious deprivation of basic human needs")).

With respect to the subjective prong, plaintiffs must show that defendants acted with "deliberate indifference," a standard that "requires proof of more than mere negligence but less than malice." *Williams*, 77 F.3d at 761.

As with Plaintiffs' discussion on "atypical and significant" hardship, much has changed since our understanding of the depravity of solitary confinement has matured. In the last two years, recognition of the harms of solitary confinement has become more widespread. *See, e.g.*, *Ruiz v. Texas*, 137 S. Ct. 1246, 1247 (2017) (Breyer, J., dissenting from denial of stay of execution) (quoting Justice Kennedy's concurrence, and indicating that he believes the Supreme Court should examine "whether extended solitary confinement survives Eighth Amendment scrutiny").

As Justice Breyer pointed out, even in 1890, the Supreme Court had acknowledged studies showing that "[a] considerable number of the prisoners fell, *after even a short confinement*, into a semi-fatuous condition, from which it was next to impossible to arouse them, and others became violently insane; others still, committed suicide; while those who stood the ordeal better were not generally reformed, and in most cases did not recover sufficient mental activity to be of any subsequent service to the community. It became evident that some changes

must be made in the system," as "its main feature of solitary confinement was found to be too severe." *In re Medley*, 134 U.S. 160, 168 (1890) (emphasis added).

Conditions in solitary confinement units have been challenged elsewhere as well. Notably, in Virginia, the Federal District Court of Eastern District of Virginia found that "[g]iven the rapidly evolving information available about the potential harmful effects of solitary confinement—and the explicit incorporation of contemporary standards of decency into the Eighth Amendment standard—it is clear that this Court is not bound by the decades-old determinations made by the Fourth Circuit and the Supreme Court on which defendants rely." *Porter v. Clarke*, 290 F.Supp.3d 518, 529 (E.D. Vir. 2018). The *Porter* Court found that the conditions on Virginia's death row were unconstitutionally cruel and unusual. *Id*. The Court defined "solitary confinement," or restrictive housing, as "any type of detention that involves three basic elements:" "[r]emoval from the general inmate population," "[p]lacement in a locked room or cell," and "[i]nability to leave the room or cell for the vast majority of the day, typically 22 hours or more." *Id*. at 528 (internal quotations omitted). These conditions mirror the conditions Plaintiffs suffered, as alleged in the Amended Complaint.

More affirmatively, the State of Colorado has severely limited the use of solitary confinement to no more than 15 days, and even then, only when there is a finding of a major rule violation. Rick Raemisch, *Why I Ended the Horror of Long-Term Solitary in Colorado's Prisons*, ACLU Blog (December 5, 2018).[1] As noted by the Colorado Department of Corrections director, 15 days follows the standards set by the United Nations Nelson Mandela Rules.[2]

---

[1] Link: https://www.aclu.org/blog/prisoners-rights/solitary-confinement/why-i-ended-horror-long-term-solitary-colorados-prisons (Last accessed December 14, 2018).
[2] G.A. Res. 70/175, Rule 44, U.N. Doc. A/RES/70/175 (January 8, 2016), accessible at https://undocs.org/A/RES/70/175 (last accessed December 14, 2018).

Indeed, as alleged in their Amended Complaint, Mr. Mora-Contreras and Mr. Staggs have sufficiently plead the physical,[3] mental, and emotional harm that would give rise to an Eighth Amendment claim. The harm they suffered is "sufficiently serious" to have denied them "the minimal civilized measure of life's necessities" giving our ever-evolving sense of decency. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). While ODOC could argue that this is matter of security for which they are entitled to deference, "careless invocations of 'deference' run the risk of returning us to the passivity of several decades ago, when the then-prevailing barbarism and squalor of many prisons were met with a judicial blind eye and a 'hands off' approach." *Shorter v. Baca*, 895 F.3d 1176, 1191 (9th Cir. 2018) (citing *Block v. Rutherford*, 468 U.S. 576, 594 (1984)) (internal quotations omitted).

Despite the apparent harm that solitary confinement would inure upon the Plaintiffs, each Defendant was deliberately indifferent to this harm and instead arbitrarily punished them to solitary confinement for the explicit purpose of extracting false accusations against other inmates. At this juncture of litigation, with the facts from the four corners of the *Amended Complaint*, viewed in the light most favorable to the Plaintiffs, Defendants' motion to dismiss must be denied.

### 3. Defendants' conduct implicates plaintiffs' right to equal protection.

Once more, Defendants mischaracterize Plaintiffs' claims. Both Plaintiffs allege that they were discriminated against and targeted for placement in solitary confinement because of their race, not merely because of their classification as prisoners. As their *Amended Complaint* alleges that ODOC places inmates-of-color in solitary including but not limited to using solitary confinement at greater rates. *Am. Comp.* ¶ 24-25, 71.

---

[3] Contrary to Defendants' assertion, Plaintiffs allege that they suffered physical harm from their time spent in solitary confinement. *Am. Comp.* Par. 19-20, 41, 51.

The fundamental principle that prisoners are protected from race discrimination is longstanding: "Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (citing *Lee v. Washington*, 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212 (1968) (per curiam)). In *Johnson*, the Supreme Court was unequivocal that strict scrutiny is the proper standard of review for an equal protection challenge to a race-based prison policy. *Johnson v. California*, 543 U.S. 499, 515 (2005).

While Defendants pose Plaintiffs' assertions that they were targeted following a riot as contradictory to this point, it belies that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Fed. Rule of Civ. Pro. 8(d)(2). The rule continues: "If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." *Id.*

Even if the Court were to construe these allegations as contradictory, so long as one, or both, pass Fed. Rule of Civ. Pro. 12(b)(6) muster. Viewed in the alternative, Plaintiffs have properly plead that Defendants targeted them for an "impermissible motive." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995). Plaintiffs alleged that Defendants, with fabricated evidence, targeted selectively them for punishment and placement in solitary confinement. At this juncture of litigation, with the facts from the four corners of the Amended Complaint, viewed in the light most favorable to the Plaintiffs, Defendants' motion to dismiss must be denied.

### 4. Defendants' conduct implicates plaintiffs' First Amendment rights.

In their *Amended Complaint*, Plaintiffs allege that "[i]n taking the actions described [in the Amended Complaint], Defendants intentionally violated Plaintiffs' rights to be making

*compelled speech* or being *retaliated against* for [not][4] giving false testimony." *Am. Comp.* ¶ 77 (emphasis added).

Contrary to Defendants' argument, neither Plaintiffs are claiming that they were defending anyone's rights beyond their own. "Snitching" has consequences. The life of an informant in prison is not enviable. *See United States v. Henderson*, 565 F.2d 900, 905 (5th Cir. 1978) ("the life of a 'snitch' in a penitentiary is not very healthy"); *see also Comstock v. McCrary*, 273 F.3d 693, 699 n. 2 (6th Cir. 2001) (noting that prisoner labeled a snitch could become a target for other prisoners' attacks); *Northington v. Marin*, 102 F.3d 1564, 1567–68 (10th Cir. 1996) (affirming award of § 1983 damages where sheriff deputy spread rumor that plaintiff was a snitch, and plaintiff was subsequently assaulted by other inmates for that reason); *Miller v. Leathers*, 913 F.2d 1085, 1088 n. * (4th Cir.1990) (en banc) ("It is impossible to minimize the possible consequences to a prisoner of being labeled a 'snitch.'"); *Harmon v. Berry*, 728 F.2d 1407, 1409 (11th Cir. 1984) (allegations that prison officials' labeling of inmate as snitch exposed him to inmate retaliation survive a motion to dismiss).

In part because of this, per the Due Process clause, inmates have a right to be protected from violence at the hands of other prisoners. *See Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989). The Ninth Circuit recognizes that being labeled a "snitch" places an inmate in danger of harm in the prison context. *Id.*; *see also David v. Hill*, 401 F. Supp. 2d 749, 757 (5th Cir. 2005) ("Because being labeled a snitch could place an inmate's life in danger, it follows that he would have a protected liberty interest in not being labeled one.")

Described in another constitutional context, "not snitching" is a general restatement of the "right not to speak." "[T]he right of freedom of thought protected by the First Amendment

---

[4] While not included in the text of the Amended Complaint, read as a whole document, the exclusion of a negative "not" before "giving false testimony" is a clear typographical error.

against state action includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977). In *Riley v. National Federation of the Blind of North Carolina, Inc.*, the Supreme Court explained,

> There is certainly some difference between compelled speech and compelled silence, but in the context of protected speech, the difference is without constitutional significance, for the First Amendment guarantees "freedom of speech," a term necessarily comprising the decision of both what to say and what *not* to say.

487 U.S. 781, 796–97, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988) (emphasis in original).

Nearly analogously to the facts of the present case, the Second Circuit addressed and illustrated the point that an inmate's rights are violated by being forced to provide false testimony.

> An individual holds 'a First Amendment right to decide what to say and what not to say, and, accordingly, the right to reject governmental efforts to require him to make statements he believes are false.' We see no basis to circumscribe this right in the prison context… Inaccurate incrimination of others—as the guards are alleged to have sought from Burns here—could lead only to unwarranted punishment. Such arbitrary and manifestly unjust outcomes would plainly undermine the integrity of the correctional system.

*Burns v. Martuscello*, 890 F.3d 77, 89 (2nd Cir. 2018) (internal citation omitted).

As here, both Mr. Mora-Contreras and Mr. Staggs allege that Yancey, Gould, Plante, and Leddy either tried to get them to provide false testimony against other inmates to get released from solitary confinement. Both declined, and continued to sit in solitary confinement. Because Defendants Yancey, Gould, Plante, and Leddy held Mr. Mora-Contreras and Mr. Staggs in solitary confinement and used it as leverage to extract false information, thus putting them in

danger of being called a "snitch," or in violation of ODOC inmate rules,[5] they violated Plaintiffs' rights to be free from compelled speech. *Riley*, 487 U.S. at 796–97 (1988).

While "[i]nmates clearly retain protections afforded by the First Amendment," *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987), "the Constitution sometimes permits greater restriction of such rights in a prison than it would allow elsewhere," *Beard v. Banks*, 548 U.S. 521, 528, 126 S.Ct. 2572, 165 L.Ed.2d 697 (2006) (plurality opinion). But those restrictions could not possibly allow the State to compel speech from inmates, and punish them if they do not comply.

To this point, the Ninth Circuit explained that it has "long recognized" that a corrections officer may not retaliate against a prisoner for exercising his First Amendment rights. *Shepard v. Quillen*, 840 F.3d 686, 688 (9th Cir. 2016), citing, *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). When a prisoner claims retaliation, the Court requires of a Plaintiff to show that (1) "a state actor took some adverse action ... (2) because of (3) [the] prisoner's protected conduct, ... that such action (4) chilled [his] exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote omitted). Administrative segregation constitutes an adverse action. *Shepard*, 840 F.3d at 688 (9th Cir. 2016).

In the *Shepard* case, the State Defendant argued that the Plaintiff's transfer to administrative segregation "reasonably advanced legitimate correctional goals," arguing that

---

[5] OAR 291-105-0015(3) provides that it is a violation to "(a) 3.01 False Information to Employees I: An inmate commits False Information to Employees I if he/she presents or causes the presentation of false or misleading information to a DOC or OCE employee that creates a threat to the safety, security or orderly operation of the facility. False or misleading information shall include gestures, verbal or written communication; "(b) 3.02 False Information to Employees II (minor violation): An inmate commits False Information to Employees II when he/she presents or causes the presentation of false and misleading information to DOC or OCE employees. False or misleading information includes gestures, verbal or written communication; or (e) 3.15 Fraud: An inmate commits fraud if he/she deceives another person or business in order to obtain money, property or something of value."

Shepard was placed in administrative segregation to "protect[] the integrity of the investigation [into Quillen] and to keep Shepard safe." Id. at 691. The Court found the justification to be "merely borrow[ed from] generic justifications." *Id.* While the Court found that "[t]here's no doubt that corrections officers should strive for unharmed prisoners and untainted investigations," *see Hewitt v. Helms*, 459 U.S. 460, 473 (1983), "the question [was] whether transferring Shepard in this circumstance reasonably advanced such goals." *Id.* at 13.

The Court continued that "[a] prison official who uses a valid procedure as subterfuge to obscure retaliation "cannot assert that [his action] served a valid penological purpose, even though [the prisoner] may have arguably ended up where he belonged." *Id.* at 692 (internal citation omitted). For the purposes of summary judgment, the Court found triable material facts, and reversed the finding of qualified immunity. *Id.* at 694.

As here, Defendants sought to compel false testimony from the Plaintiffs, and because of their constitutionally protected silence, they were placed in solitary confinement. As alleged, Plaintiffs have properly provided notice of a claim on which relief can be granted.

**D. The individual-capacity Defendants personally participated in Plaintiffs' constitutional violations.**

    1.    <u>Personal participation of Leddy, Gould, and Nofziger</u>

In their Amended Complaint, Plaintiffs give adequate notice to each of the Defendants as to why they are being sued either in their individual or official capacity.[6] Defendant Meghan Leddy investigated the claims against Mr. Mora-Contreras, and plausibly participated in the fabrication, coercion, and retaliation against him. Defendant Zachary Gould requested Mr.

---

[6] Plaintiffs further represent that Defendant Peters was solely sued in her official capacity for the purpose of binding the State actor for whom has policy control over ODOC. *See Ex Parte Young*, 209 U.S. 123 (1908). Additionally, Plaintiffs concede that any allegation made against Defendant Plante pertains solely to any relief Mr. Staggs may claim from him.

Mora-Contreras be placed in solitary confinement thus subjecting him to the cruel and unusual punishment described above, and plausibly participated in the fabrication, coercion, and retaliation against him. Lastly, Defendant Jeremy Nofziger personally unconstitutionally justified Mr. Mora-Contreras's solitary confinement, without regard to Mr. Mora-Contreras claims of innocence and the apparent fabricated evidence. His threadbare justification deprived Mr. Mora-Contreras of his constitutional rights to be free from cruel and unusual punishment and due process.

      2.    <u>Supervisory liability for Defendant Prins</u>

      Supervisory liability can be found in two circumstances: (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir.1989)).

      "The requisite causal connection can be established ... by setting in motion a series of acts by others," id. (alteration in original; internal quotation marks omitted), or by "knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury," *Id*. (citing *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 968 (9th Cir.2001)). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id*. (citing *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir.1998)) (internal alteration and quotation marks omitted).

Plaintiffs alleged enough facts in their Amended Complaint to plausibly state a claim that Defendant Prins if not personally participated in the investigation against Mr. Mora-Contreras and Mr. Staggs, he at least acquiesced to the deprivations of their rights. As Mr. Mora-Contreras learned in Two Rivers Correctional Institution, Defendant Yancey was known for retaliatory transfers. As his supervisor, Defendant Prins's conduct in not disciplining, or correctively training Defendant Yancey more than speaks to a "reckless or callous" indifference to the Plaintiffs' rights. Defendant Prins should not be dismissed from this suit.

## IV. Conclusion

Plaintiffs' Amended Complaint, whose facts should be viewed as true and in the light most favorable to them, have adequately provided the Defendants notice as to the nature of the Claims made against them. For this reason, Plaintiffs request that Defendants' Motion to Dismiss be **DENIED**.

To the extent avail, if the Court does dismiss any portion of Plaintiffs' Amended Complaint, the Plaintiffs request the ability to cure any deficiencies the Court identifies. DATED, this December 14, 2018.

/s/ *Juan C. Chavez*
Juan C. Chavez
OSB 136428
Attorney for Plaintiff

/s/ *Crystal S. Maloney*
Juan C. Chavez
OSB 164327
Attorney for Plaintiff