IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RAFAEL MORA-CONTRERAS and
SHANE STAGGS,

                          Plaintiffs,

           v.

COLETTE PETERS; DOUG YANCEY;
MEGHAN LEDDY; ZACHARY GOULD;
CRAIG PRINS; JERRY PLANTE; JEREMY
NOFZIGER; and JOHN DOES 1-5,

                        Defendants.

Case No. 6:18-cv-00678-SB

**FINDINGS AND
RECOMMENDATION**

---

**BECKERMAN, U.S. Magistrate Judge.**

       Rafael Mora-Contreras ("Mora-Contreras") and Shane Staggs ("Staggs") (together,

"Plaintiffs") bring this action under 42 U.S.C. § 1983, alleging that Colette Peters ("Peters"), the

director of the Oregon Department of Corrections ("ODOC"), and several ODOC employees

(collectively, "Defendants") violated their constitutional rights. Now before the Court is

Defendants' motion to dismiss Plaintiffs' amended complaint, pursuant to FED. R. CIV. P.

12(b)(6). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. For the

PAGE 1 – FINDINGS AND RECOMMENDATION

reasons stated below, the Court recommends that the district judge grant Defendants' motion to dismiss.

## BACKGROUND[1]

In 2016, ODOC employees began investigating prisoners because there had been an influx of drug-related deaths and a riot involving approximately 200 prisoners at the Oregon State Penitentiary ("OSP"). (*See* Am. Compl. ¶¶ 13-15, 28, 36, 44.) Plaintiffs, both of whom were OSP prisoners when the investigations began, allege that Defendants violated their constitutional rights during the investigations by "using solitary confinement [for retaliatory reasons], fabricating evidence, transferring [them] to far away facilities as retaliation, coercing false statements from informants, giving and validating prolonged arbitrary solitary detention lengths without meaningful process," and retaliating against them for refusing to "give false testimony." (Am. Compl. ¶¶ 28, 44, 58, 65, 71, 76.)

## ANALYSIS

## I.    STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

---

[1] The following facts are taken from Plaintiffs' amended complaint, which the Court accepts as true and construes in the light most favorable to Plaintiffs for the purpose of reviewing Defendants' motion to dismiss. *See Doe v. Nestle, S.A.*, 906 F.3d 1120, 1123 (9th Cir. 2018) (stating that, in reviewing a motion to dismiss for failure to state a claim, "'[a]ll factual allegations in the complaint are accepted as true, and the pleadings construed in the light most favorable to the nonmoving party'" (citing *Doe I v. Nestle USA, Inc.*, 766 F.3d 1013, 1018 (9th Cir. 2014))).

678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epstein Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (internal quotation marks omitted) (citing *Iqbal*, 556 U.S. at 678)).

## II.    DISCUSSION

### A.    Defendants' Request for Judicial Notice

Defendants request that the Court take judicial notice of the fact that Mora-Contreras was granted post-conviction relief in Washington County Circuit Court Case No. C012039CR and, as a result, Mora-Contreras is currently housed at the Washington County Jail. (Defs.' Mot. at 2 n.1.) The Court grants Defendants' unopposed request for judicial notice. *See Blacktail Mountain Ranch Co., L.L.C. v. Jonas*, 611 F. App'x 430, 431 (9th Cir. 2015) (holding that the district court did not abuse its discretion in taking judicial notice of state court proceedings); *Gibbs v. Fey*, No. 2:15-cv-01958-GMN, 2017 WL 8131473, at *3 n.2 (D. Nev. Nov. 14, 2017) (taking judicial notice of the fact that the plaintiff was housed at a different correctional facility and noting that courts may take judicial notice of information on government websites).

### B.    Defendants' Motion to Dismiss

Defendants argue the Court should dismiss Plaintiffs' amended complaint for the following reasons: (1) Mora-Contreras' claims for declaratory and injunctive relief are moot because he was transferred to another facility; (2) Plaintiffs have failed to plead facts necessary to support their constitutional claims; and (3) Defendants are entitled to qualified immunity from damages.[2] (Defs.' Mot. at 2.)

---

[2] Defendants also challenge the type of relief Plaintiffs seek (e.g., prospective injunctive relief and emotional distress damages), but the Court need not reach those issues in light of the disposition recommended herein. In addition, Defendants have withdrawn their argument that

       **1.**      **Mootness**

Defendants argue that Mora-Contreras' claims for declaratory and injunctive relief are moot because he was released from ODOC custody and now resides at the Washington County Jail. (Def.'s Mot. at 3-4.) The Court agrees.

It is well settled that "a prisoner's claims for injunctive and declaratory relief relating to prison conditions are rendered moot by his transfer to another facility." *Birdwell v. Beard*, 623 F. App'x 884, 885 (9th Cir. 2015) (citing *Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012)). In *Birdwell*, for example, the Ninth Circuit held that the district court properly concluded that the plaintiff's claims for declaratory and injunctive relief were moot because, after filing the case, he was "transferred to another prison where he [wa]s no longer subject to the prison policies he challenge[d]." *Id.*; *see also Corona v. Knowles*, 687 F. App'x 602, 604 (9th Cir. 2017) ("To the extent that Santana sought injunctive relief related to the [events] at Kern Valley State Prison, those claims are moot because he is no longer incarcerated at that facility." (citing *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991)); *Hanna v. Davis*, 644 F. App'x 730, 731 (9th Cir. 2016) ("The district court properly concluded that Hanna's requests for injunctive relief were moot because Hanna was transferred to another prison after bringing this action." (citing *Alvarez*, 667 F.3d at 1063)); *Owens v. Sec'y Fla. Dep't Corr.*, 602 F. App'x 475, 476 (11th Cir. 2015) (explaining that "[p]risoners' claims for injunctive or declaratory relief regarding prison conditions generally become moot when the prisoner transfers to another prison") (citation omitted).

Mora-Contreras "acknowledges that the immediacy of the harm . . . diminished when he was transferred to the Washington County Jail." (Pls.' Opp'n at 3.) Mora-Contreras nevertheless

---

Plaintiffs failed to allege that several of the named defendants personally participated in the alleged constitutional violations. (Defs.' Reply at 5.)

argues that his claims for declaratory and injunctive relief are not moot because if he does not

prevail in his Washington County case, "he still stands a chance . . . to be later subjected to

[unconstitutional practices] at an Oregon Department of Corrections facility." (Pls.' Opp'n at 3.)

Mora-Contreras appears to invoke the "capable of repetition, yet evading review" exception to

the mootness doctrine. (*See* Defs.' Reply at 3, making the same observation).

"The mootness exception for claims that are capable of repetition, yet evade review, 'is

limited to *extraordinary cases* in which (1) the duration of the challenged action is too short to

be fully litigated before it ceases, and (2) there is a reasonable expectation that the plaintiff will

be subjected to the same action again.'" *Alvarez*, 667 F.3d at 1064 (emphasis added) (quoting

*C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 983 (9th Cir. 2011)); *see also*

*Holmes v. Miller-Stout*, 744 F. App'x 405, 406 (9th Cir. 2018) (holding that the district court

properly dismissed as moot the plaintiff's claims for injunctive relief because he was released

from custody and, therefore, there was "no reasonable expectation" that the defendants would

violate the plaintiff's constitutional "rights in the future").

In *Alvarez*, for example, the plaintiff alleged that ODOC employees burdened his practice

of religion. 667 F.3d at 1063. The plaintiff was an ODOC prisoner when he initiated the

litigation, but during the pendency of the litigation, the plaintiff completed his prison term and

post-prison supervision. *Id.* at 1064. On appeal, the plaintiff argued that his claims for

declaratory and injunctive relief were not moot because they were "capable of repetition yet will

continue to evade review." *Id.* The Ninth Circuit observed that the only way the plaintiff "might

be returned to ODOC custody is if he commits another crime." *Id.* The Ninth Circuit found that

"possibility . . . too speculative a basis on which to conclude that [the plaintiff's] claims are

PAGE 5 – FINDINGS AND RECOMMENDATION

capable of repetition," and therefore held that the plaintiff's claims for declaratory and injunctive relief did not fall within the capable of repetition, yet evading review, exception. *Id.*

Similarly, in *Wiggins v. Rushen*, 760 F.2d 1009, 1010 (9th Cir. 1985), the plaintiff brought an action against the director of the California Department of Corrections, alleging that "access to the law library at the California Training Facility at Soledad (Soledad) for those held in maximum security was constitutionally inadequate." *Id.* The plaintiff sought an injunction. *Id.* at 1011. While the case was pending, the plaintiff was "transferred from Soledad to another facility, the Deuel Vocational Institution." *Id.* at 1010. On appeal, the plaintiff argued that the possibility of his retransfer to the maximum-security unit at Soledad was enough to invoke the "capable of repetition, yet evading review" exception to the mootness doctrine. *Id.* at 1011. The Ninth Circuit noted that the plaintiff was "presently at a county jail, awaiting trial on charges brought against him while he was on parole." *Id.* The Ninth Circuit concluded that the "possibility" that the plaintiff would "be convicted and again sent to the maximum-security unit at Soledad is too speculative to rise to the level of reasonable expectation or demonstrated probability[.]" *Id.* The Ninth Circuit also concluded that the plaintiff's claim of inadequate access to legal materials is not one that would evade review because other maximum-security prisoners at Soledad may assert the same claim. *Id.* Accordingly, the Ninth Circuit held that the plaintiff's claim for an injunction was moot. *Id.*

Consistent with the authorities described above, the Court concludes that this is not one of the "extraordinary cases" in which the "capable of repetition, yet evading review" exception applies. The possibility that Mora-Contreras might be convicted and returned to ODOC custody is "too speculative to rise to the level of reasonable expectation or demonstrated probability." *Wiggins*, 760 F.2d at 1010. Furthermore, Mora-Contreras' claims challenging the

constitutionality of solitary confinement will not evade review because other ODOC prisoners, including his co-plaintiff, may assert the same claims that Mora-Contreras seeks to raise here.

For these reasons, the Court finds that Mora-Contreras' claims for declaratory and injunctive relief are moot, and recommends that the district judge grant without prejudice Defendants' motion to dismiss Mora-Contreras' claims for declaratory and injunctive relief.

### 2.    Due Process Claims

Defendants argue that the Court should dismiss Plaintiffs' due process claims because they "have not invoked any protected liberty interest as is required to state such a claim." (Defs.' Mot. at 7.) Plaintiffs respond that they have alleged a due process claim for deliberate fabrication of evidence under *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001), that they have a constitutionally protected "liberty interest in not arbitrarily being placed in solitary confinement," and that solitary confinement itself imposes an "atypical and significant hardship" on prisoners. (Pl.'s Opp'n at 9-12.)

The Due Process Clause protects prisoners from being deprived of liberty or property without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Analysis of procedural due process claims involves a two-step inquiry: (1) whether the state interfered with a prisoner's protected liberty or property interest, and (2) whether procedural safeguards were constitutionally sufficient. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). *Wolff* sets forth the minimum procedural protections that must apply to prison disciplinary proceedings. *Id.* The Ninth Circuit summarized those requirements as follows:

> First, written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense. Second, at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [hearings officer]. Third, there must be a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action. Fourth, the inmate facing disciplinary proceedings should be allowed to

call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. Fifth, where an illiterate inmate is involved or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or to have adequate substitute aid from the staff or from an inmate designated by the staff.

*Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir. 1994) (citations, quotation marks, brackets, and ellipses omitted), *overruled on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995). "As long as the five minimum *Wolff* requirements are met, due process has been satisfied." *Carter v. Silva*, No. 16–1201, 2017 WL 2363687, at *2 (E.D. Cal. May 31, 2017) (*citing Walker*, 14 F.3d at 1420).

### a. *Devereaux* Claims (Fabrication of Evidence)

"The Ninth Circuit has recognized 'a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government.'" *Kindred v. Allenby*, No. 14-1652, 2015 WL 1956446, at *7 (E.D. Cal. Apr. 29, 2015) (citation omitted); *see also Bradford v. Scherschligt*, 803 F.3d 382, 386 (9th Cir. 2015) ("A *Devereaux* claim is a claim that the government violated the plaintiff's due process rights by subjecting the plaintiff to criminal charges based on deliberately-fabricated evidence"). Citing paragraphs thirty-three, thirty-four, forty-nine, and fifty of their amended complaint, Plaintiffs argue that they have alleged *Devereaux* claims based on their allegations that certain defendants fabricated evidence and "used these false claims against them." (Pls.' Opp'n at 10.)

Paragraphs thirty-three and thirty-four of the amended complaint include allegations specific to Mora-Contreras. (*See Am. Compl. at 6-8.*) Those paragraphs fail to allege that any defendant fabricated evidence against Mora-Contreras. (*See Am. Compl. ¶¶ 33-34*, alleging that Defendant Doug Yancey "attempted" to "extort inmates into giving false information" about

PAGE 8 – FINDINGS AND RECOMMENDATION

Mora-Contreras and that Jamie Ramirez-Gonzalez, an inmate at OSP, "refused" to "give incriminating information" about Mora-Contreras, even though Yancey threatened him with retaliation, placed him in DSU, and told Ramirez-Gonzalez that, if he "cooperated by providing incriminating evidence" against Mora-Contreras, "he would be placed back in general population with 'privileges'"). In light of the foregoing, the Court recommends that the district judge dismiss Mora-Contreras' fabrication-of-evidence due process claim, because Mora-Contreras has failed to allege that Yancey or any other defendant fabricated evidence against him.

Paragraphs forty-nine and fifty of the amended complaint include allegations specific to Staggs. (*See* Am. Compl. at 10-11.) In paragraphs forty-nine and fifty, Staggs alleges that (1) Yancey falsely represented that a "Mr. X"—an inmate who "prefers to keep his name anonymous in public filings," and who "never met" or knew Staggs—implicated Staggs in a conspiracy to "bring drugs into the facility"; and (2) Yancey bribed other prisoners with "favors, drink tickets, and wrist watches, to falsely inform" on Staggs. (Am. Compl. ¶¶ 49-50.)

Although courts have not extended *Devereaux* to the fabrication of evidence resulting in prison discipline (as opposed to criminal charges),[3] courts have recognized that "[a]n inmate may state a cognizable claim arising from a false disciplinary report . . . if the inmate was not afforded procedural due process in connection with the resulting disciplinary proceedings as provided in [*Wolff*]." *Cook v. Solorzano*, No. 17-02255, 2019 WL 1367808, at *5 (E.D. Cal. Mar. 26, 2019)

---

[3] *See, e.g., Randle v. Melendrez*, No. 16-cv-02342, 2017 WL 1197864, at *3 (C.D. Cal. Feb. 17, 2017) ("[T]he falsification of disciplinary reports does not state a stand-alone constitutional claim, because there is no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.") (citation, brackets, and internal quotation marks omitted); *cf. Garrot v. Glebe*, 600 F. App'x 540, 542 (9th Cir. 2015) ("Nor has [plaintiff] shown that it is clearly established federal law that a prisoner has a right to be free from false accusations [levied by a correction official].").

(citations omitted). Here, although Staggs generally alleges that he did not receive adequate procedural due process in connection with his disciplinary proceedings (Am. Compl. at 10-11; Pl.'s Opp'n at 11-12), he has not alleged that he was deprived of any of the required *Wolff* procedural due process protections (i.e., written notice of the charges, time to prepare for the hearing, a written statement of the evidence and reasons for disciplinary action, and the right to call witnesses and present documentary evidence). *See Smith v. Ives*, 275 F. Supp. 3d 1219, 1222-23 (D. Or. 2017) ("*Wolff* provides only that an inmate must receive his incident report at least 24 hours before his disciplinary hearing. It does not otherwise guarantee a particular time that a disciplinary hearing must take place. . . . *Wolff* also does not forbid the placement of an inmate in segregated housing during the course of a disciplinary investigation, prior to the issuance of an incident report."). Accordingly, Staggs has failed to state a due process claim based on fabrication of evidence, and the Court recommends that the district judge grant Defendants' motion to dismiss Staggs' due process claim.

### b.    Conditions of Confinement Claims

Plaintiffs also argue that they have a constitutionally protected "liberty interest in not arbitrarily being placed in solitary confinement," and that solitary confinement itself imposes an "atypical and significant hardship" that implicates a liberty interest. (Pl.'s Opp'n at 10, 12.) Defendants assert that Plaintiffs "have not alleged conditions that are 'significant and atypical,'" and "no controlling authority has ever held that inmates have a constitutionally protected liberty interest in remaining free from limited placements" in segregation. (Defs.' Reply at 6-7.) Defendants are correct.

"Prisoners are entitled to certain due process protections when subject to disciplinary sanctions." *Brown v. Or. Dep't of Corr.*, 751 F.3d 983, 987 (9th Cir. 2014) (citing *Wolff*, 418 U.S. at 564-71). The Supreme Court has held that "these procedural protections adhere only

PAGE 10 – FINDINGS AND RECOMMENDATION

where the deprivation implicates a protected liberty interest—that is, where the conditions of confinement impose an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* (quoting *Sandin*, 515 U.S. at 484); *see also Rodrigues v. Ryan*, No. 14-8141, 2015 WL 4470095, at *3 (D. Ariz. July 21, 2015) ("Plaintiff was not entitled to any due process procedural protections because he has failed to demonstrate that any of the sanctions imposed were 'atypical and significant hardships.'").

Three factors are relevant to determine whether a prison hardship is atypical and significant: (1) whether the state's action will invariably affect the duration of the prisoner's sentence; (2) the duration of the condition, and the degree of restraint imposed; and (3) "whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority." *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) (quoting *Sandin*, 515 U.S. at 486-87). "These factors need not all be present for there to be an atypical and significant hardship." *Palmer v. Salazar*, No. 08-5378, 2010 WL 5138575, at *3 (N.D. Cal. Dec. 10, 2010) (citation omitted).

The first factor is not at issue here because Plaintiffs do not allege that Defendants' actions affected the duration of their prison sentences. Further, Mora-Contreras alleges that he spent sixty-eight days in segregation and Staggs alleges that he spent a week and, later, approximately ninety days in segregation. (*See* Am. Compl. ¶¶ 28, 44, 48.) Thus, the duration of Plaintiffs' segregation alone does not implicate a liberty interest. *See Smith v. Powell*, No. 14-1725-SB, 2016 WL 11384325, at *5 (D. Or. Jan. 25, 2016) (holding that the plaintiff's 120-day confinement in disciplinary segregation did not implicate a liberty interest); *see also LaFleur v. Nooth*, No. 12-00637-SI, 2014 WL 1236138, at *5 (D. Or. Mar. 25, 2014) (noting that courts

have found that "two and one-half years of administrative segregation without a hearing during a prison riot investigation was not atypical and significant" and that "182 days in segregation with a confrontational cell mate was not atypical and significant") (citations omitted).

Accordingly, the plausibility of Plaintiffs' procedural due process claims turns on whether Plaintiffs have adequately alleged that the conditions imposed on them while in segregation constituted an atypical and significant hardship. *See Serrano v. Francis*, 345 F.3d 1071, 1078-79 (9th Cir. 2003) ("[I]t is not Serrano's administrative segregation alone that potentially implicates a protected liberty interest. Instead, Serrano's disability—coupled with administrative segregation in [a housing unit] that was not designed for disabled persons—gives rise to a protected liberty interest. That is, the conditions imposed on Serrano in the [unit], by virtue of his disability, constituted an atypical and significant hardship on him."); *see also Thomas v. DeCastro*, No. 14-cv-06409, 2019 WL 1428365, at *5-6 (S.D.N.Y. Mar. 29, 2019) (dismissing the plaintiff's procedural due process claim premised on confinements of fewer than 101 days because the plaintiff failed to allege that the conditions of his confinements were more onerous than usual).

As an initial matter, Plaintiffs proceed on the theory that solitary confinement itself imposes an atypical and significant hardship on all prisoners and thus gives rise to a protected liberty interest. In support of this argument, Plaintiffs allege that a "'growing body of evidence being developed regarding solitary confinement demonstrates the harm it creates, including severe confusional, paranoid, and hallucinatory features, as well as agitation and random, impulsive, often self-directed violence—even in persons with no prior mental illness.'" (Pls.' Opp'n at 13, quoting Am. Compl. ¶ 19.) Consistent with this evidence, Plaintiffs allege that, as a result of their confinement, they experienced distress, anxiety, sleeplessness, and tension, and

Mora-Contreras also experienced auditory hallucinations and lost twenty pounds. (Pls.' Opp'n at 13; *see also* Am. Compl. ¶ 41, alleging that, "[l]ike many who go into solitary confinement," Mora-Contreras "felt severe distress, anxiety, sleeplessness, shortness of breath, and tension").

The Court is aware of and "sensitive to research suggesting that the conditions to which inmates in solitary confinement are subjected often lead to profound psychological peril for the inmate, and as such, the use of solitary confinement itself may implicate an Eighth Amendment violation." *Thomasson v. Premo*, No. 14-01788-MO, 2017 WL 2403565, at *3 n.1 (D. Or. June 2, 2017); *see also Ruiz v. Texas*, 137 S. Ct. 1246, 1247 (2017) (Breyer, J., dissenting) (noting that the petitioner "developed symptoms long associated with solitary confinement, namely severe anxiety and depression, suicidal thoughts, hallucinations, disorientation, memory loss, and sleep difficulty"). The Court, however, must follow the "law of the land," which indicates that "solitary confinement . . . is not itself unconstitutional." *Thomasson*, 2017 WL 2403565, at *3 n.1 (citations omitted). Accordingly, to the extent that Plaintiffs' due process claims are based on the fact that they suffered from the adverse health effects often associated with solitary confinement, Plaintiffs have failed adequately to allege that the conditions of their solitary confinements imposed any *atypical* hardship.

In addition to alleging adverse health effects resulting from solitary confinement, Mora-Contreras also alleges that he lost certain privileges, such as his prison job, the ability to participate in classes, his honor housing, his ability to participate in the Latino Club, and his access to a program that allowed him to meet with "family members and loved ones in a freer environment." (Am. Compl. ¶¶ 41-42.) It is well settled that a prisoner's loss of privileges does not constitute an atypical and significant hardship. *See Nunez v. Donahue*, No. 12-01071, 2015 WL 13744630, at *13 (N.D.N.Y. Nov. 23, 2015) ("The Supreme Court has held that a prisoner

does not have a constitutionally-derived liberty interest in assignment to a particular part of a prison. Moreover, it has also been held that there is no protected liberty interest in Honor Block housing. However, even if prisoners had a liberty interest in honor housing, . . . the mere denial of the extra privileges associated with Honor Block does not impose an atypical and significant hardship.") (citations, quotation marks, and ellipses omitted); *Hurd v. Stanciel*, No. 15-00073, 2015 WL 10889995, at *3 (N.D. Miss. Dec. 10, 2015) (holding that the plaintiff failed to state a due process claim because the "loss of privileges for 90 days" was not an atypical or significant hardship); *Wilson v. Bock*, No. 11-2376, 2012 WL 993371, at *3 (D. Ariz. Mar. 23, 2012) ("Plaintiff was not entitled to any due process procedural protections because the loss of privileges is not an atypical and significant hardship."); *LeBlanc v. Beard*, No. 10-1444, 2011 WL 3321333, at *3 (M.D. Pa. Aug. 2, 2011) (dismissing the plaintiff's due process claim because he failed to allege "facts suggesting that his confinement in disciplinary segregation subjected him to 'atypical and significant hardship,'" and noting that the plaintiff alleged that he was prohibited from talking to other prisoners, had limited visitation opportunities, if any, had limited access to out-of-cell activities such as education and programs, and lost paid jobs); *Green v. Dep't of Corr.*, 393 F. App'x 20, 24 n.2 (3d Cir. 2010) (holding that the plaintiff failed to state a Fourteenth Amendment claim and noting that the "Due Process Clause does not grant prisoners a constitutionally protected liberty or property interest in their prison job assignments"); *Kula v. Malani*, No. 07-452, 2007 WL 4258655, at *2 (D. Haw. Dec. 5, 2007) ("Prisoners . . . have no liberty or property interest in work or vocational programs."). Accordingly, the Court

recommends that the district judge grant Defendants' motion to dismiss Mora-Contreras' procedural due process claim.[4]

Like Mora-Contreras, Staggs' due process claim is premised on allegations that: (1) he suffered from adverse health effects often associated with solitary confinement, such as anxiety, depression, and lack of sleep; and (2) he "lost privileges," such as family visits, his prison job, and his ability to attend classes and participate in a "Drug Awareness" program. (Am. Compl. ¶¶ 45, 51-52.) As discussed, these hardships are not atypical, and Staggs does not have a constitutionally derived liberty or property interest in special privileges.

Staggs, however, also alleges, based on his own personal experience and observation of other prisoners, that correctional officers taunted prisoners in solitary confinement "with insults and rock music over the intercom," correctional officers would "pepper spray or tase inmates for merely disagreeing with them," and Staggs was exposed to pepper spray that entered "through [his] air vents" when other prisoners were pepper sprayed. (Am. Compl. ¶ 52; Pls.' Opp'n at 13.) Defendants did not address these allegations in their motion papers. (*Compare* Am. Compl. ¶ 52, *and* Pls.' Opp'n at 13, *with* Defs.' Mot. at 5-7, 13-14, *and* Defs.' Reply at 6-7.)

Accepting the foregoing allegations as true and construing them in the light most favorable to Staggs, the Court concludes that Staggs has plausibly alleged that the combination of conditions imposed on him while in solitary confinement may constitute an atypical and

---

[4] The Court need not address Defendants' qualified immunity arguments to the extent Plaintiffs have failed to state viable constitutional claims. *See Ransom v. Herrera*, No. 11-cv-01709, 2016 WL 7474866, at *13 (E.D. Cal. Dec. 28, 2016) ("Because the Court has found that Plaintiff has failed to state a claim against Defendant Castro, the Court need not address the issue of qualified immunity."); *Johnson v. Hayden*, No. 11-539-ST, 2012 WL 652586, at *3 (D. Or. Feb. 10, 2012) ("Because Johnson fails to state a viable constitutional claim against Hayden, the court need not address Hayden's alternative argument for dismissal based on qualified immunity.").

significant hardship sufficient to trigger a liberty interest. However, although Staggs generally alleges that he did not receive adequate procedural due process in connection with his disciplinary proceedings (Am. Compl. at 10-11; Pl.'s Opp'n at 11-12), he has not alleged that he was deprived of any of the required *Wolff* procedural due process protections. Accordingly, the Court recommends that the district judge grant Defendants' motion to dismiss Staggs' due process claim.

### 3.    Eighth Amendment Claims

Plaintiffs allege that Defendants' use of solitary confinement resulted in cruel and unusual punishment in violation of the Eighth Amendment. (Am. Compl. ¶¶ 63-68.) Defendants argue that Plaintiffs' Eighth Amendment claims fail as a matter of law because the conditions about which Plaintiffs complain do not amount to cruel and unusual punishment. (Defs.' Mot. at 7.)

"The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement." *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Although "conditions of confinement may be, and often are, restrictive and harsh, they 'must not involve the wanton and unnecessary infliction of pain.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). A prisoner claiming an Eighth Amendment violation must allege facts plausibly showing: "(1) that the deprivation he suffered was 'objectively, sufficiently serious;' and (2) that prison officials were deliberately indifferent to his safety in allowing the deprivation to take place." *See id.* at 1045 (quoting *Farmer*, 511 U.S. at 834).

As discussed above, even if it is clear that prolonged solitary confinement results in severe adverse consequences to prisoners, this Court must follow precedent holding that solitary

confinement does not violate the Eighth Amendment. *See Thomasson*, 2017 WL 2403565, at *3 n.1 (citing Supreme Court cases and explaining that the "law of the land" indicates that "solitary confinement . . . is not itself unconstitutional"). The law is also clear that the loss of privileges while in segregation does not rise to the level of cruel and unusual punishment. *See Smith v. Daguio*, No. 18-06378, 2019 WL 1472308, at *4 (N.D. Cal. Apr. 1, 2019) (stating that "[t]here is no law that supports the claim that the loss of *privileges* amounts to cruel and unusual punishment" and therefore dismissing the plaintiff's Eighth Amendment claim); *Thao v. Dickinson*, No. 11-2235, 2013 WL 2458413, at *7 (E.D. Cal. June 6, 2013) ("[P]laintiff's . . . Eighth Amendment claims must fail because [he] does not allege that he has been deprived of adequate shelter, food, clothing, sanitation, medical care, or personal safety. Instead, he claims that he was deprived of full privileges, such as daily phone calls and contact visits. Plaintiff has no Eighth Amendment right to full privileges, and accordingly their deprivation does not support a cognizable claim.") (footnote omitted); *Sams v. Thomas*, No. 11-333-AC, 2011 WL 2457407, at *3 (D. Or. May 12, 2011) ("[T]he mere fact of a prison transfer, standing alone, does not constitute cruel and unusual punishment . . . . [E]ven inmate transfers to facilities far from their homes do not rise to the level of cruel and unusual punishment.") (citations omitted).[5] Accordingly, the Court recommends that the district judge grant Defendants' motion to dismiss Plaintiffs' Eighth Amendment claims.

---

[5] Although Staggs does not specifically cite his allegations regarding excessive and non-penological use of pepper spray and tasers in his Eighth Amendment claim, those allegations present a closer call. However, Staggs alleges that those methods were used on other inmates in segregation, not directly on him. *See* Am. Compl. ¶ 52 ("The Officers would pepper spray or tase inmates for merely disagreeing with them. Whenever another person was pepper sprayed in another cell, the spray would enter Mr. Staggs' cell through the air vents, irritating his senses."). Notably, Staggs does not allege that Defendants ever used pepper spray or a taser on him, nor that Defendants failed timely to decontaminate his cell, denied him a shower, or denied him medical attention following exposure to pepper spray. *Cf. McCoy v. Tann*, No. 11-1771, 2013

4.        **Equal Protection Claims**

Defendants argue that Plaintiffs fail to state plausible equal protection claims. (Defs.'
Mot. at 9-10.) "The Equal Protection Clause requires the State to treat all similarly situated
people equally." *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008) (citation omitted). "'To
state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the
Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose
to discriminate against the plaintiff based upon membership in a protected class.'" *Furnace v.
Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (quoting *Barren v. Harrington*, 152 F.3d 1193,
1194 (9th Cir. 1998)).

There is no dispute that Plaintiffs are members of a protected class. (*See* Defs.' Mot. at
9.) Plaintiffs, however, fail to allege facts plausibly suggesting that Defendants acted with an
intent or purpose to discriminate against Plaintiffs based upon their membership in a protected
class.

Plaintiffs generally allege that black and Hispanic prisoners are disproportionately housed
in ODOC's more punitive forms of administrative segregation, that "'people of color
comprise . . . 34.3 percent of [the] segregated population,'" and that ODOC "arbitrarily punishes
people of color at greater rates." (Am. Compl. ¶¶ 24-25, 71.) Plaintiffs, however, allege that
there was an influx of drug-related deaths and a large riot in 2016; ODOC's Special
Investigations Unit ("SIU") and Security Threat Management ("STM") investigated these

<hr />

WL 3992125, at *4 (E.D. Cal. Aug. 1, 2013) ("Plaintiff alleged that [the defendant] was part of a
team that pepper sprayed him and then did not allow Plaintiff sufficient means to decontaminate
himself. Such allegations, taken as true at this stage of the proceedings, sufficiently allege a
claim for cruel and unusual punishment under the Eighth Amendment."). In addition, the verbal
harassment Staggs cites does not violate the Eighth Amendment. *See Keenan v. Hall*, 83 F.3d
1083, 1092 (9th Cir. 1996) (affirming summary judgment on prisoner's verbal harassment claim,
noting that "verbal harassment generally does not violate the Eighth Amendment").

PAGE 18 – FINDINGS AND RECOMMENDATION

matters and "inmates they arbitrarily presumed to be threats to the facility"; SIU and STM

"wanted to hold inmates 'accountable' for the drug influx and riot and attempted to levy cases

against inmates whom the institution distrusted or whom challenged their notion of authority";

SIU and STM "targeted Plaintiffs for punishment as a show of force"; SIU was investigating

Mora-Contreras for "alleged drug possession and distribution charges"; Yancey retaliated against

"uncooperative inmates," such as Plaintiffs; and Staggs was placed in solitary confinement

because Yancey alleged he gave drugs to his cellmate, who had been "caught with drugs in his

pocket." (Am. Compl. ¶¶ 13-16, 28, 44, 46.)

Plaintiffs have not alleged any facts to support their claim that race was a motivating

factor for their treatment here. On the contrary, Plaintiffs allege that Defendants targeted them

for several other reasons, including because they were uncooperative. Plaintiffs do not allege that

Defendants targeted only black and Hispanic prisoners in the investigation or that Defendants

treated similarly situated white prisoners differently. Under these circumstances, the Court

concludes that Plaintiffs have failed to state a plausible equal protection claim. Accordingly, the

Court recommends that the district judge grant Defendants' motion to dismiss Plaintiffs' equal

protection claims. *See Cabrera v. Maddock*, No. 10-611, 2012 WL 3778827, at *5 (E.D. Cal.

Aug. 30, 2012) ("[Plaintiff's] allegations indicate that race may not have been a motivating

factor. Defendant Crouch allegedly told Plaintiff that the search was in response to an assault on

prison guards, for the purpose of discovering evidence of gang affiliation, and that thirty-one

prisoners were targeted. Plaintiff's personal belief that the search was motivated by race by itself

is not sufficient to state a claim. The fact that Hispanics alone were targeted is significant.

However, to state an equal protection claim, an amended complaint . . . should provide enough

circumstantial detail, such as statements or specific conduct, to support his conclusion that race

was a motivating factor in the search rather than a coincidence." (citing *Serrano*, 345 F.3d at 1082)).

### 5.    First Amendment Claims

Defendants argue that Plaintiffs' First Amendment claims fail as a matter of law. (Defs.' Mot. at 10-12.) In their response, Plaintiffs argue that in a "[n]early analogous[]" case, "the Second Circuit addressed and illustrated the point that an inmate's rights are violated by being forced to provide false testimony," as Plaintiffs allege. (Pls.' Opp'n at 20, citing *Burns v. Martuscello*, 890 F.3d 77, 89 (2d Cir. 2018)). In their reply, Defendants argue that, "even if the Court elects to follow *Burns*, it follows that Defendants are entitled to qualified immunity." (Defs.' Reply at 8.)

In *Burns*, a prisoner alleged that his First Amendment "rights were violated when he was put on a restricted status known as Involuntary Protective Custody ('IPC') for over six months, after he refused the demands of prison guards to act as a 'snitch,' or to falsify his account of a minor incident in the commissary." 890 F.3d at 81. The district court held that the First Amendment did not protect the plaintiff's "refusal to snitch." *Id.* On appeal, the Second Circuit held "that the First Amendment protects both a prisoner's right not to serve as an informant, and to refuse to provide false information to prison officials," just as "citizens enjoy a First Amendment right to refuse to provide false information to the government." *Id.* The Second Circuit recognized that it had never previously recognized such a right in the prison context. *Id.* Accordingly, the Second Circuit held that the *Burns* defendants were entitled to qualified immunity because a prisoner's right not to serve as an informant, and to refuse to provide false information to prison officials, was "not clearly established at the time of the events underlying th[e] suit." *Id.* The Second Circuit affirmed the judgment of the district court. *Id.*

Courts in this circuit begin their qualified immunity inquiry by looking first to "'binding precedent.'" *Tarabochia v. Adkins*, 766 F.3d 1115, 1125 (9th Cir. 2014) (quoting *Boyd v. Benton Cty.*, 374 F.3d 773, 781 (9th Cir. 2004)). If the right at issue (here, a prisoner's right not to serve as an informant, and to refuse to provide false information to prison officials) is "'clearly established by decisional authority of the Supreme Court or [Ninth] Circuit, [a court's] inquiry should come to an end.'" *Id.* (quoting *Boyd*, 374 F.3d at 781). In the absence of binding precedent from the Supreme Court or Ninth Circuit clearly establishing the constitutional right at issue, courts look to "whatever decisional law is available," including decisions from "other circuits." *Id.*

The Court has not identified any binding precedent from the Supreme Court or the Ninth Circuit clearly establishing a prisoner's right not to serve as an informant, and to refuse to provide false information to prison officials. Nor did the Second Circuit reveal a prior case. *See Burns*, 890 F.3d at 94 ("[N]either the Supreme Court nor any other circuit court has yet to decide whether a prisoner holds a right not to serve as an informant."). Although the Court finds that *Burns* clearly established a prisoner's right not to serve as an informant or provide false information, the alleged misconduct in this case pre-dated *Burns*. Accordingly, this Court must conclude that Plaintiffs' right not to serve as informants, and to refuse to provide false information to prison officials, was not clearly established at the time of the alleged offense. *See Fazaga v. FBI*, 916 F.3d 1202, 1217-18 (9th Cir. 2019) ("For purposes of qualified immunity, a right is clearly established if, *at the time of the challenged conduct*, the contours of [the] right [were] sufficiently clear that *every reasonable official* would have understood that what he is doing violates that right.") (emphasis added) (citation and quotation marks omitted). Defendants are therefore entitled to qualified immunity on Plaintiff's First Amendment claims. Accordingly,

the Court recommends that the district judge grant Defendants' motion to dismiss Plaintiffs' First Amendment claims. *See, e.g.*, *Rogers v. Giurbino*, 731 F. App'x 722, 723 (9th Cir. 2018) ("The district court properly dismissed the . . . First Amendment claims [at the motion to dismiss stage] because [defendants] are entitled to qualified immunity.").

## CONCLUSION

For the reasons stated, the Court recommends that the district judge GRANT Defendants' motion to dismiss (ECF No. 31), but provide Plaintiffs an opportunity to file a second amended complaint if they are able to cure any of the deficiencies identified herein.

## SCHEDULING ORDER

The Court will refer its Findings and Recommendation to a district judge.[6] Objections, if any, are due within fourteen (14) days. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due within fourteen (14) days. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 20th day of June, 2019.

STACIE F. BECKERMAN
United States Magistrate Judge

---

[6] Absent consent of all parties to the jurisdiction of a U.S. Magistrate Judge, the undersigned must refer any dispositive motions to a U.S. District Judge by issuing Findings and Recommendation ("F&R"). Parties may avoid the delay and expense of this review process, while preserving the right of appeal to the Ninth Circuit Court of Appeals, by consenting to the jurisdiction of a U.S. Magistrate Judge. Parties may consent at any time prior to trial, and Standing Order 2017-4 directs that parties may file consents electronically (in CM/ECF, "Consents" may be found under "Civil Events," "Other Filings"). Consents filed while an F&R is pending will not become effective until after the U.S. District Judge has ruled on the pending F&R.