**Juan C. Chavez**, OSB #136428
Email: juan@chavezlawpdx.com
**Crystal S. Maloney**, OSB #164327
Email: crystal.s.maloney@gmail.com
PO Box 5248
Portland, OR 97208
Telephone: 971-599-3358
Facsimile: 503-715-5763

    Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| RAFAEL MORA-CONTRERAS; and SHANE STAGGS, | Case No. 6:18-cv-00678-SB |
| Plaintiffs, | |
| vs. | PLAINTIFFS' OBJECTIONS TO THE FINDINGS AND RECOMMENDATIONS ON DEFENDANTS' MOTION TO DISMISS |
| COLETTE PETERS; DOUG YANCEY; MEGHAN LEDDY; ZACHARY GOULD; CRAIG PRINS; JERRY PLANTE; JEREMY NOFZIGER; and JOHN DOES 1-5, | |
| Defendants. | |

## I. INTRODUCTION

    Pursuant to FRCP 72(b)(2), Plaintiffs provide these objections to the Magistrate's

Findings and Recommendations. These objections follow the Magistrate's recommendation of

dismissal upon Defendants' FRCP 12(b)(6) motion. Plaintiffs do not objection to § II.A.'s grant

of judicial notice, or the Magistrate's grant of leave for filing an amended complaint.

**PLAINTIFFS' OBJECTIONS TO THE FINDINGS AND RECOMMENDATIONS**

## II. APPLICABLE FEDERAL RULES

### A. FRCP 12(b)(6)

The Federal Rules provide: "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:.. (6) failure to state a claim upon which relief can be granted." Fed. R. of Civ. Pro. 12(b)(6).

As Magistrate Hubel explained in *Murphy v. Volt Information Sciences, Inc.*, 2013 WL 5372787 (D. Or. 2013).

> "The court evaluates 12(b)(6) motions to dismiss under the standards summarized by Chief Judge Aiken of this court in *Gambee v. Cornelius*, No. 10–CV–6265–AA, 2011 WL 1311782 (D.Or. Apr.1, 2011) (Aiken, C.J.). Judge Aiken observed:
> Under Fed.R.Civ.P. 12(b)(6), a complaint is construed in favor of the plaintiff, and its factual allegations are taken as true. *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir.2010). '[F]or a complaint to survive a motion to dismiss, the nonconclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.' *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir.2009). 'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). '[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.' *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563[, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929] (2007). '[G]enerally the scope of review on a motion to dismiss for failure to state a claim is limited to the Complaint.' *Daniels–Hall*, 629 F.3d at 998."

### III. THE COURT SHOULD NOT ADOPT THE MAGISTRATE'S FINDINGS AND RECOMMENDATIONS

The Magistrate's recommendation for dismissal was erroneous, particularly at this stage of litigation. Plaintiffs' Amended Complaint plainly state claims of relief on all bases alleged, and should be allowed to proceed to discovery.

///

**PLAINTIFFS' OBJECTIONS TO THE FINDINGS AND RECOMMENDATIONS**

**A. Claim 1: Due Process**

In their Complaint, Mr. Staggs and Mora-Contreras allege that they were deprived of their substantive and procedural due process rights. To support these claims, Plaintiffs cited instances where Defendants coerced and bribed inmates, concocted fake affidavits and testimony, and presented these allegations in false misconduct reports, which landed them in solitary confinement. *Am. Comp.* ¶ 33-34, 49-50. Plaintiffs also alleged that solitary confinement itself violates the due process clause as an "atypical and significant hardship" in comparison to the everyday experience of a prisoner. *Id.* at ¶ 58. Plaintiffs alleged that they suffered both physically and mentally while in solitary confinement in a manner distinguishable from their ordinary prisoner experience, and cited the evolving medical science supporting this. *Id.* at ¶¶ 17-26. The Plaintiffs more than met the prima facie threshold to sustain a claim for deprivation of due process rights.

1. Procedural Due Process

Both Plaintiffs alleged that Defendants had coerced false testimony out of inmates to frame them for disciplinary infractions they had not committed. *Am. Comp.* ¶ 33-34, 49-50. Then, what Defendants could not coerce out of inmates, they fabricated, Plaintiffs alleged. *Id.*

In the Magistrate's Findings and Recommendations, the Court posed the question of whether Plaintiffs stated a claim for a due process deprivation in the disciplinary context per *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). However, this construction needlessly places Plaintiffs' claims under a *Wolff* analysis, when *Devereaux* speaks directly to this issue.

*Devereaux v. Abbey* found that "there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir. 2001). The Court derived this right from the Supreme Court's holding in *Pyle v. Kansas*, 317 U.S. 213,

**PLAINTIFFS' OBJECTIONS TO THE FINDINGS AND RECOMMENDATIONS**

216, 63 S.Ct. 177, 87 L.Ed. 214 (1942), that "the knowing use by the prosecution of perjured

testimony in order to secure a criminal conviction violates the Constitution." *Devereaux*, 263

F.3d at 1075. This right also extends to civil investigations. *Costanich v. Department of Social

and Health Services*, 627 F.3d 1101 (9th Cir. 2010) (relating to civil child abuse hearings). To

support a *Devereaux* deliberate-fabrication-of-evidence claim, a plaintiff must show that:

> (1) Defendants continued their investigation of [plaintiff] despite
> the fact that they knew or should have known that he was innocent;
> or (2) Defendants used investigative techniques that were so
> coercive and abusive that they knew or should have known that
> those techniques would yield false information.

*Id*. at 1076.

To this point, Mr. Mora-Contreras alleges that Defendants Yancey, Leddy and Gould,

and Mr. Staggs alleges that Defendants Yancey and Plante fabricated evidence through coercion

and bribery, and used these false claims against them. *Am. Comp.* ¶ 33-34, 49-50. The facts

articulated give ample notice to these Defendants as to the reason why they are being sued, and

the clear legal basis on which Plaintiffs' claims rest. Viewing the facts as true, and in Plaintiffs'

favor, Plaintiffs cannot be dismissed on this ground.

Plaintiffs add that *Wolff*'s woefully inadequate protections for inmate due process rights

should be augmented, as invited by the Supreme Court in *Wolff*. The Court noted that the contours

of these limited rights were not "graven in stone," and that more Due Process rights may be

developed as prisons change. *Wolff*, 418 U.S. at 563–67. At the time of the Supreme Court's

decision nearly 50 years ago, this may have meant the extension of the rights enunciated in

*Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972) and

*Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973)—such as the right to

confront witnesses and cross-examine adverse witnesses as in *Morrissey* and the right to counsel

as in *Scarpelli*. A due process right to not have false evidence created then used against an inmate in

**PLAINTIFFS' OBJECTIONS TO THE FINDINGS AND RECOMMENDATIONS**
Page 4 of 10

the disciplinary setting fits neatly with these expansions of *Wolff*. The Court should recognize that inmates have the right to not be arbitrarily placed in solitary confinement based on false and fabricated evidence, and should not adopt the Magistrate's Findings and Recommendations.

    2. Substantive Due Process

Plaintiffs articulated claims in their Amended Complaint which would give rise to a substantive due process claim. Plaintiffs will not rehash their arguments from their Opposition Brief in full, but will instead again highlight that at this juncture of litigation, the questions posed to the Court, and that has been left unanswered by the Findings and Recommendations, is whether the Plaintiffs suffered an "atypical" harm.

As alleged, Plaintiffs suffered immensely while in solitary confinement. This suffering is bolstered by the growing body of evidence and medical literature that solitary confinement leads to profound psychological peril for the inmate, as cited by the Magistrate in her Findings and Recommendations. *Fs and Rs* at 13. Given this, as a threshold matter, the Court need not look to stale law on the matter such as *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) and *Resnick v. Hayes*, 213 F.3d 443 (9th Cir. 2000), but to the Due Process principles that undergird them.

Indeed, Ninth Circuit jurisprudence acknowledges that prolonged "solitary confinement for over twenty-three hours each day with almost no interpersonal contact, and denied [an inmate] most privileges afforded inmates in the general population" does, while not entirely on its own, implicate the Due Process clause. *Brown v. Oregon Dept. of Corrections*, 751 F.3d 983, 988 (9th Cir. 2014). Plaintiffs did not need to be in solitary confinement for 27 months, as the Plaintiff in *Brown* had, to feel the negative health effects of solitary confinement.

**PLAINTIFFS' OBJECTIONS TO THE FINDINGS AND RECOMMENDATIONS**
Page 5 of 10

As a threshold matter, with facts viewed in a light more favorable to the Plaintiffs, the Amended Complaint should not have been dismissed for lack of a cognizable claim for one was clearly stated.[1] The Court should not adopt the Magistrate's Findings and Recommendations.

**B. Claim 2: Cruel and Unusual Punishment**

Plaintiffs again do not wish to rehash their briefing; however, again highlight as with their Substantive Due Process claim, that at this stage of litigation, in viewing the Amended Complaint in a light most favorable to the Plaintiffs the Court would undoubtedly find that Defendants are operating and maintaining a perilous institution in solitary confinement. Mr. Mora-Contreras and Mr. Staggs have sufficiently plead the physical,[2] mental, and emotional harm that would give rise to an Eighth Amendment claim. The harm they suffered is "sufficiently serious" to have denied them "the minimal civilized measure of life's necessities" giving our ever-evolving sense of decency. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In their briefing, Plaintiffs have demonstrated that our society has learned much since the days of *Sandin*. Our "sense of decency" has evolved both in terms of science and practice in regard to solitary confinement.

In the last two years, recognition of the harms of solitary confinement has become more widespread. *See, e.g.*, *Ruiz v. Texas*, 137 S. Ct. 1246, 1247 (2017) (Breyer, J., dissenting from denial of stay of execution) (quoting Justice Kennedy's concurrence, and indicating that he believes the Supreme Court should examine "whether extended solitary confinement survives Eighth Amendment scrutiny").

---

[1] While the Court did not reach the question as to whether Defendants should be afforded Qualified Immunity, Plaintiffs nonetheless would object to Defendants' suggestion that it applies in this case for all claims. As briefed in their Opposition Memorandum, Qualified Immunity is neither applicable for these claims, nor ultimately tenable as a legal theory of defense.
[2] Plaintiffs again note that they alleged that they suffered not only emotional and mental harm, but physical harm from their time spent in solitary confinement. *Am. Comp.* Par. 19-20, 41, 51.

As Justice Breyer acknowledged, even in 1890, the Supreme Court had noted studies showing that "[a] considerable number of the prisoners fell, *after even a short confinement*, into a semi-fatuous condition, from which it was next to impossible to arouse them, and others became violently insane; others still, committed suicide; while those who stood the ordeal better were not generally reformed, and in most cases did not recover sufficient mental activity to be of any subsequent service to the community. It became evident that some changes must be made in the system," as "its main feature of solitary confinement was found to be too severe." *In re Medley*, 134 U.S. 160, 168 (1890) (emphasis added).

In practice, more states are moving away from harsh, prolonged stints in solitary confinement. This is because solitary is in fact more expensive and not effective. U.S. Gov't Accountability Off., GAO-13-429, Bureau of Prisons: Improvements Needed in Bureau of Prisons' Monitoring and Evaluation of Impact of Segregated Housing (2013), at 33, 39.[3] Five states— Colorado, Kansas, Maine, Mississippi, and Ohio—found no increase in violence following reduced reliance on solitary confinement. *Id.* at 33. Two states—Colorado and Mississippi—found cost savings in closing their solitary confinement wings. *Id.*

The Court should not adopt the Magistrate's Findings and Recommendations on the Eighth Amendment claim.

## C. Claim 3: Equal Protection

Plaintiffs disagree with the Court's finding that they failed to state a claim of a violation of the Equal Protection clause, and request that the Court review the Magistrate's finding *de novo*. However, Plaintiffs acknowledge that additional facts could elucidate this claim and will take the opportunity to amend their Complaint.

---

[3] Accessible at http://www.gao.gov/assets/660/654349.pdf [perma.cc/U7JJ-ZEQA].

**PLAINTIFFS' OBJECTIONS TO THE FINDINGS AND RECOMMENDATIONS**
Page 7 of 10

**D. Claim 4: First Amendment**

Plaintiffs clearly stated a claim for the right to not be retaliated against for not providing the false testimony that Defendants were eliciting. While Plaintiffs had relied on a nearly analogous case from the Second Circuit, *Burns v. Martuscello*, 890 F.3d 77, 89 (2nd Cir. 2018), Plaintiffs also relied on another analogous case from the Ninth Circuit, *Shepard v. Quillen*, 840 F.3d 686, 688 (9th Cir. 2016), as well as long-standing Supreme Court case law. *Wooley v. Maynard*, 430 U.S. 705, 714, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977); *Riley v. National Federation of the Blind of North Carolina, Inc.*, 487 U.S. 781, 796–97, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988) ("[T]he First Amendment guarantees 'freedom of speech,' a term necessarily comprising the decision of both what to say and what *not* to say) (emphasis original).

The *Shepard* case provides a clear articulation of the speech right violated by Defendants. the Ninth Circuit explained that it has "long recognized" that a corrections officer may not retaliate against a prisoner for exercising his First Amendment rights. *Shepard v. Quillen*, 840 F.3d 686, 688 (9th Cir. 2016), citing, *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). When a prisoner claims retaliation, the Court requires of a Plaintiff to show that (1) "a state actor took some adverse action ... (2) because of (3) [the] prisoner's protected conduct, ... that such action (4) chilled [his] exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote omitted). Administrative segregation constitutes an adverse action. *Shepard*, 840 F.3d at 688 (9th Cir. 2016).

In the *Shepard* case, the facts were as such: Shepard told a Lieutenant (Wise, the Defendant) that he had been "roughed up" by another C/O. *Shepard*, 840 F.3d at 688. The Lieutenant told Shepard that "maybe [they could] work something out" and "suggested Shepard

recant his statement against Quillen." *Id.* The Lieutenant told Shepard that if he filed the report, he would be put in administrative segregation. *Id.* Shepard decided to go forward with his complaint, and was sent to administrative segregation that same day where he spent about three months. *Id.*

The State Defendant argued that the Plaintiff's transfer to administrative segregation "reasonably advanced legitimate correctional goals," arguing that Shepard was placed in administrative segregation to "protect[] the integrity of the investigation [into Quillen] and to keep Shepard safe." Id. at 691. The Court found the justification to be "merely borrow[ed from] generic justifications." *Id.* While the Court found that "[t]here's no doubt that corrections officers should strive for unharmed prisoners and untainted investigations," *see Hewitt v. Helms*, 459 U.S. 460, 473 (1983), "the question [was] whether transferring Shepard in this circumstance reasonably advanced such goals." *Id*. at 13.

The Court continued that "[a] prison official who uses a valid procedure as subterfuge to obscure retaliation "cannot assert that [his action] served a valid penological purpose, even though [the prisoner] may have arguably ended up where he belonged." *Id.* at 692 (internal citation omitted). For the purposes of summary judgment, the Court found triable material facts, and reversed the finding of qualified immunity. *Id*. at 694.

As here, Defendants sought to compel false testimony from the Plaintiffs, and because of their constitutionally protected silence, they were placed in solitary confinement. As alleged, Plaintiffs have properly provided notice of a claim on which relief can be granted.

If the Court disagrees with our proposition that this is clearly established law, Plaintiffs request that the Court answer the first question posed by the qualified immunity analysis posed by *Saucier v. Katz*, 533 U.S. 194 (2001), and determine whether a constitutional right had been

violated under the given circumstance. While the Court abandoned the "rigid order of battle" of the two-step *Saucier* analysis in *Pearson v. Callahan*, 555 US 223, 234 (2009), the Court continued to recognized that the approach can be beneficial in promoting "the development of constitutional precedent[,]" and "is especially valuable with respect to questions that do not frequently arise in cases in which a qualified immunity defense is unavailable." *Id*. at 236. The public would be served by a clear enunciation of whether or not Plaintiffs' First Amendment rights were violated by being retaliated against for not providing false, coerced testimony.

## IV. CONCLUSION

Plaintiffs' Amended Complaint, whose facts should be viewed as true and in the light most favorable to them, have adequately provided the Defendants notice as to the nature of the Claims made against them. For this reason, Plaintiffs request that the Court not adopt the Magistrate's Findings and Recommendations.

To the extent avail, if the Court does dismiss any portion of Plaintiffs' Amended Complaint, the Plaintiffs request the ability to cure any deficiencies the Court identifies. DATED, this July 31, 2019.

/s/ *Juan C. Chavez*
Juan C. Chavez
OSB 136428
Attorney for Plaintiff