ELLEN F. ROSENBLUM
Attorney General
SHANNON M. VINCENT  #054700
Senior Assistant Attorney General
NATHANIEL AGGREY  #172283
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 947-4700
Fax: (503) 947-4791
Email:  shannon.m.vincent@doj.state.or.us
         nathaniel.aggrey@doj.state.or.us

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| RAFAEL MORA-CONTRERAS; and SHANE STAGGS,<br><br>    Plaintiffs,<br><br>    v.<br><br>COLETTE PETERS; DOUG YANCEY; MEGHAN LEDDY; ZACHARY GOULD; CRAIG PRINS; JERRY PLANTE; JEREMY NOFZIGER; AND JOHN DOES 1-5,<br><br>    Defendants. | Case No.  6:18-CV-00678-SB<br><br>DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT<br><br>**Fed. R. Civ. P. 12(b)(6)** |

**CERTIFICATE OF CONFERRAL**

Pursuant to L.R. 7-1(a)(1)(A), counsel for defendants certifies that the parties made a good faith effort to resolve the dispute in this motion by telephone but were unable to do so.

Page 1 -   DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
           COMPLAINT
           SMV/bl2/9942212-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

# MOTION

Plaintiffs Rafael Mora-Contreras and Shane Staggs are suing the Director of the Oregon Department of Corrections (ODOC) and ODOC employees for alleged constitutional violations.

At all times material to plaintiffs' complaint, Mr. Mora-Contreras and Mr. Staggs were ODOC inmates. Mr. Mora-Contreras and Mr. Staggs allege that they were "punish[ed] . . . without due process" in connection with investigations into inmate drug use and a riot at Oregon State Penitentiary (OSP) in the summer of 2016. (Sec. Am. Compl. Dkt. #65, pp. 1, 4).

Mr. Mora-Contreras alleges that he was placed in administrative segregation for 68 days beginning April 22, 2016, in connection with the investigations at OSP, and that he was later transferred to Two Rivers Correctional Institution (TRCI). (*Id.* at ¶¶ 31, 42; pp. 9, 11). Likewise, Mr. Staggs alleges that he was placed in segregation for investigations—citing a one week stay in segregation in October of 2016 after his cellmate was caught with drugs in his pocket, and time in segregation "from November to January 2017." (*Id.* at ¶¶ 48, 54; pp. 12-13). Plaintiffs allege that defendants infringed on their rights to procedural and substantive due process, to be free from cruel and unusual punishment, to equal protection, and to be free from compelled speech and from being retaliated against for refusal to give false testimony. (*Id.* at pp. 15-21). They seek money damages and declaratory and injunctive relief. *Id.*

Defendants move the Court for an order dismissing plaintiffs' case for four reasons: (A) the injunctive relief that Mr. Staggs is seeking does not comply with the PLRA's restriction on prospective injunctive relief; (B) plaintiffs have not pleaded that Defendants Director of ODOC Colette Peters, Correctional Officer Zachary Gould, Inspector General Craig Prins, or Hearings Officer Jeremy Nofziger personally participated in any alleged constitutional violations; (C) plaintiffs have not pleaded the facts necessary to support their constitutional claims; and (D) defendants are entitled to qualified immunity from damages.

Page 2 -   DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
SMV/bl2/9942212-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

# MEMORANDUM OF LAW

## I. Applicable Legal Standard.

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).

In considering a Rule 12(b)(6) motion, a court must accept the plaintiff's material factual allegations as true and view all facts in the light most favorable to the plaintiff. *Reynolds v. Giusto*, Case No. 08–CV–6261, 2009 WL 2523727, at *1 (D. Or. Aug. 18, 2009). A complaint must include facts sufficient to give proper notice of the claim and its basis: "While a complaint attacked [under] Rule 12(b)(6) . . . does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (brackets omitted). A complaint that does not cross the line from conceivable to plausible must be dismissed. *Id*. at 547.

## II. Legal Argument.

### A. The injunctive relief that Mr. Staggs is seeking does not comply with the PLRA's restriction on prospective injunctive relief.

Mr. Stagg's proposed injunctive relief (plaintiffs have withdrawn Mr. Mora-Contreras's claims for injunctive relief) does not comply with the Prison Litigation Reform Act's (PLRA's) restrictions on prospective injunctive relief. Under the PLRA:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A). A prospective injunction is only appropriate under the PLRA when it is narrowly drawn and is "the least intrusive means necessary" to vindicate a constitutional violation. *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).

Page 3 -   DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
SMV/bl2/9942212-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

Section 3626(a) "operates simultaneously to restrict the equity jurisdiction of federal courts and to protect prison administrators' bargaining power—no longer may courts grant relief that binds prison administrators to do more than the constitutional minimum." *Gilmore v. People of the State of Cal.,* 220 F.3d 987, 999 (9th Cir. 2000). "[O]ne of the purposes of the Act was to restrict severely the intrusion of the judiciary in the operation of prisons." *Plata v. Schwarzenegger*, 603 F.3d 1088, 1095 (9th Cir. 2010) (citing *Gilmore*, 220 F.3d at 996-97).

Here, the prospective injunctive relief that Mr. Staggs seeks does not comply with the PLRA's "narrowly drawn" requirement. Instead, he is seeking blanket prohibitions against the use of solitary confinement and asks the Court to order that defendants follow the law. But a general injunction that defendants must "follow the law" (which they already must do) is not appropriate in the absence of an imminent or ongoing constitutional violation, which is not alleged in this case. Thus, the Court should dismiss Mr. Stagg's claims for injunctive relief.

> **B.    Plaintiffs have not pleaded that Defendants Director of ODOC Colette Peters, Correctional Officer Zachary Gould, Inspector General Craig Prins, or Hearings Officer Jeremy Nofziger personally participated in any alleged constitutional violations.**

To establish a Section 1983 claim against an individual defendant, a plaintiff must plead personal participation by the defendant. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution."). State officials cannot be held liable under 42 U.S.C. § 1983 on a *respondeat superior* theory. *Id.*; *Monell v. Dep't of Soc. Serv.s of City of New York*, 436 U.S. 658, 691-694 (1978).

Here, plaintiffs have not alleged what Director Peters, Correctional Officer Gould, Inspector General Prins, or Hearings Officer Nofziger personally did to violate their constitutional rights.[1] It appears they are being sued in their supervisory capacities.

---

[1] Defendant Inspector Jerry Plante also raises this defense with regard to Mr. Mora-Contreras's claims. The only substantive allegation against Inspector Plante is that he "conducted the investigation, and provided the 'factual' basis to administratively prosecute Mr. Staggs." (Sec. Am. Compl., Dkt. # 65, ¶ 54, p. 13).

Page 4 -   DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
 SMV/bl2/9942212-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

To the extent that plaintiffs are suing these defendants for other defendants' actions, they cannot be held liable under Section 1983 on a *respondeat superior* theory of liability. *Id. See also*, *King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir. 1987). A supervisor may face Section 1983 liability only if there was either: (1) personal involvement by the supervisor in the constitutional deprivation; or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001). Here, plaintiffs' bare allegations against Director Peters, Correctional Officer Gould, Inspector General Prins, and Hearings Officer Nofziger do not cross the Section 1983 liability threshold.

    **C.**    **Plaintiffs' constitutional claims fail as a matter of law.**

        **1.**    **Plaintiffs' due process claim fails as a matter of law.**

            **a.**    **No protected liberty interest alleged.**

Neither the 68 days that Mr. Mora-Contreras alleges he spent in administrative segregation nor the limited time that Mr. Staggs alleges that he spent in administrative segregation (a one week stay in October of 2016 and "from November to January 2017") are deprivations that amount to a "protected liberty interest" necessary for a due process claim. Constitutional due process protections attach only to instances "where the deprivation implicates a protected liberty interest—that is, where the conditions of confinement impose an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Brown v. ODOC*, 751 F.3d 983, 987 (9th Cir. 2014) (quoting *Sandin v. Connor*, 515 U.S. 472, 484 (1995)). In determining whether a condition is "significant and atypical," the Court considers "'1) whether the challenged condition mirrored those conditions imposed upon inmates in administrative segregation and protective custody, and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence.'" *Id*. (citing *Ramirez v. Galaza,* 334 F.3d 850, 861 (9th Cir. 2003)).

Page 5 -    DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
SMV/bl2/9942212-v1

Here, plaintiffs' due process claims are rooted in limited time spent in administrative segregation. But neither the Ninth Circuit nor the United States Supreme Court has ever held that a 68-day (in the case of Mr. Mora-Contreras) or a 90-day (Mr. Staggs alleges that he was kept in administrative segregation from "November to January 2017" (Sec. Am. Compl., Dkt. #65, ¶ 54, p. 13)) stay in administrative segregation, standing alone, amounts to a "significant and atypical hardship." The Ninth Circuit has explicitly held that time in a segregation unit does not amount to a violation of a protected liberty interest. *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) (placement in a segregation unit does not implicate liberty interest); *Resnick v. Hayes*, 213 F.3d 443 (9th Cir. 2000) (prisoner has no cognizable due process claim because he has no liberty interest in being free from disciplinary segregation).

Plaintiffs have not alleged facts that would plausibly demonstrate that it would have been clear to any defendant in this case that an up to 90-day placement in administrative segregation amounted to a significant and atypical hardship. This is not the type of "indefinite detention" that the Supreme Court has found to give rise to a protected liberty interest. *Wilkinson v. Austin,* 545 U.S. 209, 210–11 (2005) (inmates remained indefinitely in isolated cells for twenty-three hours each day with virtually no human contact). This is also not the type of indefinite detention that the Ninth Circuit has found "significant and atypical." *Brown,* 751 F.3d at 988 (27 months segregated housing). This case is more akin to a finite placement in segregated housing, which does not generally constitute a significant and atypical hardship. *Smith v. Powell*, Case No. 2:14-cv-01725-SB, 2016 WL 1183086 (D. Or. March 28, 2016) (120-day placement in DSU).

The Court has noted that there is no bright-line rule as to when the duration of segregation invokes a liberty interest. See *LaFleur v. Nooth*, 2014 WL 1236138, at *4-5 (D. Or., Mar. 25, 2014) (collecting cases, and noting that placements from 40 days to 2.5 years had been found to not be "significant and atypical"). Since *LaFleur*, the Ninth Circuit clarified in *Brown* that a 27-month stay in segregation invokes such an interest. *See Brown,* 751 F.3d at 988.

Page 6 -   DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
SMV/bl2/9942212-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

This court has stated that "[l]iberally read, *Brown* may be interpreted to implicate a liberty interest any time that an inmate faces '*lengthy confinement without meaningful review*' in a housing unit with conditions which differ significantly from those imposed in whatever housing unit constitutes the 'appropriate baseline.'" *Evans v. Deacon*, Case No. 3:11-cv-00272-ST, 2015 WL 248412, *13 (D. Or., Jan. 20, 2015) (emphasis added) (quoting *Brown*, 751 F.3d at 988), *rev'd in part on other grounds*, 687 Fed. Appx. 589 (9th Cir. 2017).[2]  The Ninth Circuit has not provided further guidance other than to state that 27 months is significant and atypical under any plausible baseline.  And this court has already held that a 120-day DSU sanction does not implicate the due process clause.  *Smith*, 2016 WL 1183086, at *2.

Defendants acknowledge that the length of time an inmate spends in segregation is not the only factor that the Court must consider.  Even a 25-day placement in administrative segregation can be "significant and atypical" based on the particular facts of the case.  *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) (wheelchair-bound inmate placed in segregation without the ability to perform certain activities of daily living).  But plaintiffs have not alleged any facts that would plausibly demonstrate that their limited time in administrative segregation sanction was a "novel situation" like that in *Serrano*. *Id*.  Plaintiffs' alleged losses in this case are not a significant and atypical hardship.

Plaintiffs allege that they lost privileges, such as work assignments and honor housing.  (Sec. Am Compl. Dkt. #65, p. 12).  But it is well settled that a prisoner's loss of privileges does not constitute an atypical and significant hardship and inmates are not entitled to any particular housing placement.  *Henderson v. Hamren*, 32 Fed. Appx. 393 (9th Cir. 2002) ("[A]n inmate has no liberty interest in participating in work programs."); see *Wilson v. Butler*, Case No. CIV S-07-0497-RRB-CMK-P, 2008 WL 850017, *6 (E.D. Cal. March 28, 2008) ("[T]here is also no liberty interest in remaining in a lower security housing unit.") (citing cases).

---

[2] In *Evans*, the plaintiff spent 148 days in segregation in 2010—the detention did not impact the plaintiff's sentence and predated *Brown*.  2015 WL 248412 at *13.

Page 7 -   DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
            COMPLAINT
      SMV/bl2/9942212-v1

In their Second Amended Complaint, plaintiffs allege that they suffered adverse health effects while in segregation. Mr. Mora-Contreras alleges that his time in solitary "placed him in hot, stuffy room with no sunlight, little space, little to occupy his mind . . . ," and Mr. Staggs alleges that he suffered "health effects" while he was in solitary, and that officers were known to "pepper spray [other] inmates" during cell extractions. (Sec. Am. Compl., Dkt. #65, pp. 11, 14-15). But those allegations are insufficient to state a claim that any defendant named in this case imposed any serious or atypical conditions of confinement on plaintiffs, because plaintiffs' "conditions of confinement" claims are not alleged with any specificity against any of the named defendants. Plaintiffs do not allege that any of the defendants named in this case are directly responsible for the conditions of the segregation unit.

Relatedly, Mr. Staggs fails to make any concrete allegations against any of the named defendants in his vague allegations about "pepper spray." (Sec. Am. Compl., Dkt. #65, ¶ 59, pp. 14-15). Mr. Staggs alleges that unnamed officers used pepper spray on unnamed inmates in segregation, not directly on him. He alleges that "[o]fficers would pepper spray or taser inmates for merely disagreeing with them." (Sec. Am. Compl., Dkt. #65, ¶ 59, p. 15). But Mr. Staggs does not have standing to enforce the rights of others, and he alleges no facts suggesting the personal involvement of any defendants in pepper spraying in his vicinity.

In sum, plaintiffs have not alleged that any defendant infringed any liberty interest.

### b.     No conduct implicating procedural due process alleged.

In addition, plaintiffs cannot establish a procedural due process violation based on fabrication of evidence in a prison disciplinary proceeding. The Due Process Clause protects prisoners from being deprived of liberty or property without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The court's analysis of procedural due process claims usually involves a two-step inquiry: (1) whether the state interfered with a protected liberty or property interest; and (2) whether procedural safeguards were constitutionally sufficient. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

Page 8 -   DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
SMV/bl2/9942212-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

In *Wolff*, the Supreme Court enumerated five minimum procedural requirements that must apply to prison disciplinary proceedings, which the Ninth Circuit has recognized as:

> Firstly, written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense.  Second, after the notice, no less than 24 hours should be allowed to the inmate to prepare for the appearance before the [hearings officer].  Third, there must be a written statement by the factfinders as to the evidence relied upon and reasons for the disciplinary action.  Fourth, the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.  Fifth, where an illiterate inmate is involved or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or to have adequate substitute aid from the staff or from an inmate designated by the staff.

*Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir. 1994) (citations, quotation marks, brackets, and ellipses omitted), overruled on other grounds by *Sandin v. Connor*, 515 U.S. 472 (1995).  If those "five Wolff requirement are met, due process has been satisfied."  *Walker*, 14 F.3d at 1420.

In the criminal context, the Ninth Circuit recognizes that prisoners have a clearly established due process right not to be subjected to criminal charges on the basis of false evidence deliberately fabricated.  *Kindred v. Allenby*, No. 14-1652, 2015 WL 1956446, at *7 (E.D. Cal. Apr. 29, 2015) (citation omitted); see also *Bradford v. Scherschligt*, 803 F.3d 382, 386 (9th Cir. 2015) ("A *Devereaux* claim is a claim that the government violated the plaintiff's due process rights by subjecting the plaintiff to criminal charges based on deliberately-fabricated evidence").  In this case, plaintiffs attempt to allege a *Devereaux* claim because they allege that STM Correctional Lieutenant Doug Yancey fabricated evidence against them:  Mr. Mora-Contreras alleges that Lieutenant Yancey fabricated evidence and used it against him (Sec. Am. Compl., Dkt. #65, ¶ 29, p. 8), and Mr. Staggs alleges that Lieutenant Yancey both (1) falsely represented that another inmate implicated Mr. Staggs in a conspiracy to bring drugs into the facility and (2) bribed other inmates with favors to falsely inform on Staggs (*id.* at ¶¶ 56- 57, p. 14).

Page 9 -    DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
SMV/bl2/9942212-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

Although courts have not extended the *Devereaux* standard to include fabrication of evidence resulting in prison discipline (as opposed to criminal charges), courts have recognized that an inmate may state a cognizable claim arising from a false disciplinary report if the inmate was not afforded procedural due process in connection with the resulting disciplinary proceedings as provided in accordance with *Wolff*. *Cook v. Solorzano*, Case No. 17-02255, 2019 WL 1367808, *5 (E.D. Cal. Mar. 26, 2019) (citations omitted).

Here, although plaintiffs' vaguely allege that they did not receive adequate procedural due process with regard to their disciplinary proceedings (Sec. Am. Compl., Dkt. #65, pp. 8, 13-14), they have not alleged that they were deprived of any of the required *Wolff* procedural due process protections—such as written notice of the charges, time to prepare for the hearing, a written statement of the evidence and reasons for disciplinary action, or the right to call witnesses and present evidence in their defense. Moreover, in *Wolff*, the Supreme Court did not forbid the placement of an inmate in segregated housing during the course of a disciplinary investigation, prior to the issuance of an incident report.

In short, plaintiff s fail to state a due process claim based on fabrication of evidence. For this reason, too, the Court should dismiss their due process claim.

### 2. Plaintiffs' Eighth Amendment claim fails as a matter of law.

Plaintiffs allege that they were subjected to cruel and unusual punishment in the form of administrative segregation placements, transfers to other ODOC facilities, and fabricated evidence (allegations that are rooted in investigative tactics that were allegedly aimed at third parties who are not before the Court). (Sec. Am. Compl., Dkt. #65, ¶ 72, p. 17). Plaintiffs' Eighth Amendment claims fail as a matter of law because (a) the conditions about which they complain do not amount to cruel and unusual punishment; and (b) their emotional distress damages are barred by the PLRA.

Page 10 -  DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
            COMPLAINT
         SMV/bl2/9942212-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

### a.  Conditions did not amount to cruel and unusual punishment.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. CONST. amend VIII. "The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones, and it is now settled that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal citations omitted). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Id.* at 828. A prison official violates the Eighth Amendment when two requirements are met. *Id.* at 834. "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). And "The second requirement follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Id.* (quoting *Wilson*, 501 U.S. at 297).

Here, plaintiffs' complaints about being housed in administrative segregation and about their transfers to other ODOC prisons do not implicate the Eighth Amendment. Being housed in administrative segregation does not constitute cruel and unusual punishment. The Ninth Circuit has held that the mere placement of a prisoner in administrative segregation or isolation does not violate the Eighth Amendment. *Salstrom v. Sumner*, 959 F.2d 241, at *1 (9th Cir. 1992); see also *Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995) (administrative segregation is within the terms of confinement ordinarily contemplated by a sentence, and does not violate the Eighth Amendment despite the accompanying restrictions on, among other things, exercise and recreation). Likewise, plaintiffs also do not have a constitutional right to avoid being transferred among prisons. *Sams v. Thomas*, Case No. 11-333-AC, 2011 WL 2457407, at *3 (D. Or. May 12, 2011) ("[T]he mere fact of a prison transfer, standing alone, does not constitute cruel and unusual punishment in violation of the Eighth Amendment.").

Because plaintiffs have failed to allege objectively, sufficiently serious deprivations, their Eighth Amendment claims fail as a matter of law and must be dismissed.

Page 11 -   DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
            COMPLAINT
    SMV/bl2/9942212-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

### b.  Emotional distress damages are barred by the PLRA.

The PLRA states: "[n]o Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). "[F]or all claims to which it applies, 42 U.S.C. § 1997e(e) requires a prior showing of physical injury that need not be significant, but must be more than *de minimus*." *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002).

Here, plaintiffs cannot recover damages for alleged mental or emotional injuries related to their Eighth Amendment claims, because they do not allege any constitutionally significant physical injuries caused by defendants' alleged conduct.

### 3.  Plaintiffs' equal protection claim fails as a matter of law.

"The Equal Protection Clause requires the State to treat all similarly situated people equally." *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008) (citation omitted). A plaintiff can establish an equal protection claim in two ways: (1) by showing that a defendant has discriminated against him on the basis of his membership in a protected class, *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001); or (2) by showing that a defendant has intentionally treated him differently from similarly situated individuals without a legitimate state purpose for doing so, *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Under the first theory, a plaintiff must show that the defendant's actions were a result of the plaintiff's membership in a protected class, such as race. *Thorton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005). In this case, plaintiffs are members of a protected class. (Sec. Am. Compl., Dkt. #65, ¶¶ 27, 44, pp. 8, 12). But they have not alleged any plausible facts to suggest that they were discriminated against because of their race. Rather, plaintiffs allege that they were a focus of the investigation for several reasons, including because they were uncooperative. (Sec. Am. Compl., Dkt. #65, ¶¶ 26, 37, pp. 4, 10 (alleging that "When he could not receive the information he wanted, Defendant Yancey punished people . . . .")).

Page 12 -   DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
SMV/bl2/9942212-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

Under the second theory, a plaintiff must allege that: (1) he is a member of an identifiable class; (2) he was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. *Village of Willowbrook*, 528 U.S. at 564. If an equal protection claim is based upon the defendant's selective enforcement of a valid law or rule, a plaintiff must show that the selective enforcement is based upon an "impermissible motive." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995).

Here, plaintiffs do not allege any facts that demonstrate that they were treated differently from others similarly situated without a rational basis for the different treatment. On the contrary, they acknowledge in their complaint that "Around April 2016, . . . some inmates died from an influx of drugs into ODOC," and ODOC's Special Investigations Unit (SIU) and Security Threat Management Team (STM) were investigating threats to prison safety. (Sec. Am. Compl., Dkt. #65, ¶ 13, p. 4). Likewise, plaintiffs allege that "In the summer of 2016, a riot allegedly erupted at Oregon State Penitentiary," and "Upon information and belief, SIU/STM wanted to hold inmates 'accountable' for the drug influx and riot and attempted to levy cases against inmates whom the institution distrusted or whom challenged their notion of authority." (*Id.* at ¶¶ 14-15, p. 4).

In other words, plaintiffs concede that SIU and STM were investigating serious threats to prison safety and security. As such, they cannot establish facts to plausibly suggest that defendants acted with an intent or purpose to discriminate against them. And because there are no facts alleged from which a factfinder could conclude that they were treated differently from others similarly situated, plaintiffs' equal protection claim fails as a matter of law.

### 4. Plaintiffs' First Amendment claims fail as a matter of law.

#### a. Mr. Mora-Contreras's First Amendment claim.

Mr. Mora-Contreras alleges that Defendant OSP Security STM Correctional Lieutenant Doug Yancey offered another inmate—who is not a plaintiff in this lawsuit—a placement "in general population with 'privileges'" if he "provided incriminating evidence against Mr. Mora-

Page 13 -   DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
 SMV/bl2/9942212-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

Contreras." (Sec. Am. Compl., Dkt. #65, ¶¶ 36-38, pp. 9-10). He further alleges that Lieutenant Yancey asked for "incriminating information about the . . . riot" and he (Mr. Mora-Contreras) declined to give it to him (*id.* at ¶ 40, p. 10), and that he was transferred to TRCI because he was uncooperative with the investigation (*id.* at ¶ 42, p. 11). He also alleges that Defendant Yancey "intentionally violated [his] rights to be [free from] making compelled speech or being retaliated against for giving false testimony." (*Id.* at ¶ 84, p. 19).

Mr. Mora-Contreras's First Amendment claim fails as a matter of law. To the extent the claim is rooted in Lieutenant Yancey's incentives to other inmates to cooperate in an investigation, Mr. Mora-Contreras does not have standing to enforce the rights of others. And to the extent the claim is rooted in Lieutenant Yancey's request that Mr. Mora-Contreras provide incriminating information about a prison riot, neither the United States Supreme Court nor the Ninth Circuit nor this Court have held that there is a constitutionally protected right to refuse to be an informant. To the contrary, the Ninth Circuit in *United States v. Paguio*, 114 F.3d 928, 930 (9th Cir. 1980), held that "[t]here is no constitutional right not to 'snitch.'"

In *Dixon v. Gonzalez*, an Eastern District of California case, a prisoner alleged that he was moved to secured housing in retaliation for his perceived refusal to cooperate with an investigation. Case No. 1:09–cv–00172–OWW DLB PC, 2009 WL 3416005, at *3 (E.D. Cal. Oct. 21, 2009). The court noted that "'Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.'" *Id.*, quoting *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). Applying that framework, the Court concluded that there were "no facts alleged indicating that Plaintiff was engaged in any protected conduct." *Id.* Here, as in *Dixon*, Mr. Mora-Contreras has not alleged facts indicating he was engaged in any protected conduct. Thus, the Court should dismiss his First Amendment claim.

Page 14 -   DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
SMV/bl2/9942212-v1

### b. Mr. Staggs's First Amendment claim.

Like Mr. Mora-Contreras, Mr. Staggs alleges that defendants "intentionally violated [his] rights to be [free from] making compelled speech or being retaliated against for giving false testimony." (Sec. Am. Compl., Dkt. # 65, ¶ 84, p. 19). He further alleges that Lieutenant Yancey "bribed inmates, with favors, drink tickets, contraband, and wrist watches, to falsely inform on Mr. Staggs." (*Id.* at ¶ 57, p. 14).

Mr. Staggs's First Amendment claims fail as a matter of law because Mr. Staggs does not allege that he was ever compelled to speak, let alone retaliated against because of his speech (or lack thereof). The allegations related to speech are rooted in his allegations that Lieutenant Yancey offered other inmates—who are not parties to this lawsuit—incentives to cooperate in his investigation. Mr. Staggs does not have standing to enforce the rights of others, so his First Amendment claims fail as a matter of law and must be dismissed.

### D. Defendants are entitled to qualified immunity from damages.

An official should be denied qualified immunity from money damages for alleged constitutional violations only when "[t]he contours of the right are sufficiently clear that a reasonable official would understand that what [s]he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Applying the *Anderson* test, the Ninth Circuit articulated a two-part analysis for determining officials' qualified immunity: "(1) Was the law governing the official's conduct clearly established? (2) Under that law, could a reasonable officer have believed the conduct was lawful?" *Neely v. Feinstein,* 50 F.3d 1502, 1507 (1995) (citing *Act Up!/Portland v. Bagley*, 988 F.2d 868, 871 (9th Cir. 1993)).

Qualified immunity is immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985). Consequently, the Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation.

Page 15 - DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
SMV/bl2/9942212-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

See, e.g., *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*per curiam*); *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Here, even if a constitutional violation occurred, a reasonable prison official would have believed that the procedures employed in this case, all in accordance with ODOC policy, were lawful. See *Neely v. Feinstein,* 50 F.3d 1502, 1507 (1995). Plaintiffs have not alleged what Defendants Director Peters, Correctional Officer Gould, Inspector General Prins, or Hearings Officer Nofziger personally did to violate their constitutional rights, and they could not have known that their conduct—which is not made clear in plaintiffs' amended complaint apart from vague allegations of vicarious liability—would violate plaintiffs' constitutional rights.

Likewise, Defendants Lieutenant Yancey, Inspector Leddy, and Inspector Plante, who were investigating serious prison security threats, could not have known that their conduct would violate plaintiffs' constitutional rights. Plaintiffs do not have a constitutionally-protected interest in remaining free from administrative segregation under the facts alleged, nor do they have a right to be housed in a prison of their choosing. Because defendants in this case would have no reason to know that their conduct was unlawful, they are entitled to qualified immunity from plaintiffs' constitutional claims for money damages.

Page 16 -   DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
            COMPLAINT
    SMV/bl2/9942212-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

### III.     Conclusion.

For the foregoing reasons, the Court should dismiss plaintiffs' Second Amended Complaint for failure to state a claim for relief.  Because this is plaintiffs' third attempt at pleading, defendants request that this case be dismissed with prejudice.

DATED November 12, 2019.

<div style="margin-left: 40%">
Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General


*s/ Shannon M. Vincent*
SHANNON M. VINCENT  #054700
Senior Assistant Attorney General
NATHANIEL AGGREY  #172283
Assistant Attorney General
Trial Attorneys
Tel (503) 947-4700
Fax (503) 947-4791
shannon.m.vincent@doj.state.or.us
nathaniel.aggrey@doj.state.or.us
Of Attorneys for Defendants
</div>

Page 17 -   DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
              COMPLAINT
    SMV/bl2/9942212-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791