IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RAFAEL MORA-CONTRERAS and
SHANE STAGGS,

Plaintiffs,

v.

COLETTE PETERS; DOUG YANCEY;
MEGHAN LEDDY; ZACHARY GOULD;
CRAIG PRINS; JERRY PLANTE; JEREMY
NOFZIGER; and JOHN DOES 1-5,

Defendants.

Case No. 6:18-cv-00678-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Rafael Mora-Contreras ("Mora-Contreras") and Shane Staggs ("Staggs") (together,

"Plaintiffs") bring this action under 42 U.S.C. § 1983, alleging that Colette Peters ("Peters"), the

director of the Oregon Department of Corrections ("ODOC"), and several ODOC employees

(collectively, "Defendants") violated their constitutional rights. Now before the Court is

Defendants' motion to dismiss Plaintiffs' second amended complaint, pursuant to FED. R. CIV. P.

12(b)(6). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, and all parties

PAGE 1 – OPINION AND ORDER

have consented to the jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636. For

the reasons stated below, the Court grants Defendants' motion to dismiss.

## BACKGROUND[1]

In 2016, ODOC employees opened an investigation following an increase in drug-related

deaths and a riot involving approximately 200 individuals in custody at the Oregon State

Penitentiary ("OSP"). Plaintiffs, both in OSP custody when the investigations began, allege that

Defendants violated their constitutional rights during the investigation by "using solitary

confinement, fabrication of evidence, and other means to punish inmates without due process."

(Sec. Am. Compl. ("SAC") at 1, ECF No. 65.)

## ANALYSIS

### I.    STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility

standard is not akin to a probability requirement, but it asks for more than a sheer possibility that

a defendant has acted unlawfully." *Mashiri v. Epstein Grinnell & Howell*, 845 F.3d 984, 988 (9th

Cir. 2017) (internal quotation marks omitted) (citing *Iqbal*, 556 U.S. at 678)).

///

---

[1] The Court accepts as true the facts alleged in Plaintiffs' second amended complaint and construes those facts in the light most favorable to Plaintiffs for the purpose of reviewing Defendants' motion to dismiss. *See Austin v. Univ. of Oregon*, 925 F.3d 1133, 1137 (9th Cir. 2019) (holding that at the pleading stage, "[a]ll factual allegations are accepted as true, and all reasonable inferences must be drawn in favor of the plaintiff") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

II.     **DISCUSSION**

A.     **Procedural Background**

The Court dismissed Plaintiffs' amended complaint on the grounds that Plaintiffs failed

to state: (i) a due process claim, where Plaintiffs did not allege that they were denied the required

procedural due process protections in connection with any disciplinary proceedings and did not

allege that solitary confinement imposed an atypical and significant hardship that implicates a

liberty interest; (ii) an Eighth Amendment claim in light of longstanding precedent holding that

solitary confinement does not violate the Eighth Amendment; or (iii) an equal protection claim

because Plaintiffs did not allege facts plausibly suggesting that Defendants acted with an intent

or purpose to discriminate against Plaintiffs based upon their membership in a protected class.

(Findings & Recommendation ("F&R") at 3-20, ECF No. 40; Order at 1-3, ECF No. 51.) The

Court also held that Defendants are entitled to qualified immunity for Plaintiffs' First

Amendment retaliation claims, because Plaintiffs' right not to serve as informants, and to refuse

to provide false information to prison officials, was not clearly established at the time of the

alleged offense. (F&R at 20-22.) The Court granted Plaintiffs leave to file a second amended

complaint. (Order at 3.)

Plaintiffs filed a second amended complaint, newly alleging that: (1) the cells in OSP's

segregation units provided minimal ventilation, individuals suffered from intense heat, and the

fans were loud (SAC ¶ 19); (2) individuals in segregation were not provided time outside for

fresh air or sunlight, and the cell windows were painted over to block sunlight (SAC ¶ 20); (3)

individuals in segregation were not provided exercise equipment or meaningful physical

recreation (SAC ¶ 21); (4) Staggs was denied a shower after being exposed to pepper spray used

on another individual (SAC ¶ 59); (5) on information and belief, defendant Yancey did not like

Mora-Contreras because of his influence amongst Latinx individuals in custody (SAC ¶ 28); and

PAGE 3 – OPINION AND ORDER

(6) defendant Yancey subjected Staggs to strip searches and made crude comments and racist

jokes. (SAC ¶ 53.) Plaintiffs seek damages and attorney's fees and costs (SAC ¶ 62), and Staggs

seeks declaratory and injunctive relief. (SAC ¶¶ 90-91.)

### B.    Motion to Dismiss

Defendants filed a motion to dismiss the second amended complaint. (Defs.' Mot., ECF

No. 69.) The parties acknowledge that Defendants' motion to dismiss the second amended

complaint, and Plaintiffs' response thereto, largely mirror the parties' prior briefing on

Defendants' motion to dismiss the amended complaint. Plaintiffs note that they have repeated

certain arguments in response to the second motion to dismiss, despite the Court's rejection of

those arguments in its earlier opinion, to preserve the arguments for appeal. (Pls.' Resp. at 2,

ECF No. 72.) The Court does not revisit all of the issues addressed in its earlier opinion, but

incorporates that opinion by reference and addresses herein Plaintiffs' new allegations.

### 1.    Due Process Claims

The Court dismissed Plaintiffs' due process claims on the grounds that Plaintiffs did not

allege that they were denied any of the procedural protections required by *Wolff v. McDonnell*,

418 U.S. 539, 556 (1974), and because Plaintiffs did not adequately allege that the sanctions they

received implicated a protected liberty interest. (F&R at 7-16.) Specifically, the Court recognized

that an individual in custody does not have a protected liberty interest in a minimum custody

status or other privileges absent an "atypical, significant deprivation" (*Sandin v. Conner*, 515

U.S. 472, 486 (1995), overruled on other grounds by *Edwards v. Balisok*, 520 U.S. 641 (1997)),

and that short-term placements in segregation and loss of privileges do not implicate a protected

liberty interest. *See Brown v. Or. Dep't of Corr.*, 751 F.3d 983, 987 (9th Cir. 2014) (holding that

"[p]risoners are entitled to certain due process protections when subject to disciplinary

sanctions[,]" and that "these procedural protections adhere only where the deprivation implicates

PAGE 4 – OPINION AND ORDER

a protected liberty interest—that is, where the conditions of confinement impose an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life'") (quoting *Sandin*, 515 U.S. at 484); *see also Sandin*, 515 U.S. at 484-85 (holding that even a "concededly punitive" transfer to less desirable housing conditions did not exceed prison officials' authority because it did "not present a dramatic departure from the basic conditions of [the individual's] indeterminate sentence").

As in their amended complaint, Plaintiffs do not allege in the second amended complaint that Defendants denied them any of the *Wolff* procedural protections prior to receiving disciplinary sanctions.[2] Accordingly, Plaintiffs have failed to state a procedural due process claim.

With respect to pleading deprivation of a liberty interest to support their procedural and substantive due process claims, Plaintiffs newly allege in their second amended complaint that the conditions of the segregated housing units included overheating, loud fans, and lack of sunlight and recreation. (SAC ¶¶ 19-21.) However, Plaintiffs fail to allege that the conditions in OSP's disciplinary segregation unit presented atypical and significant hardships compared to the conditions in OSP's administrative segregation unit, nor that the conditions in the segregation units presented atypical and significant hardships compared to Plaintiffs' experience in the general population.[3] *See Resnick v. Hayes*, 213 F.3d 443, 445, 448 (9th Cir. 2000) (holding that

---

[2] Instead, Plaintiffs argue that *Wolff* "should be revisited and expanded." (Pls.' Resp. at 17.)

[3] It is unclear if Mora-Contreras was housed in administrative segregation ("ASU") only, or also in disciplinary segregation ("DSU"), and how the conditions differed between the two units. (*See* SAC ¶¶ 31, 36, alleging that on April 22, 2016, Mora-Contreras was placed "into administrative segregation . . . for 68 days," and that on April 22, 2016, Mora-Contreras was "placed . . . in DSU[.]") It is also unclear if Staggs was housed only in disciplinary segregation, or also in administrative segregation. (*Compare* SAC ¶¶ 48, 50, 54, alleging that Staggs was

the relevant test is whether the segregation is "materially different from those conditions imposed on inmates in purely discretionary segregation" and finding "no allegation that Plaintiff's segregation in the [Special Housing Unit] was materially different from those conditions imposed on inmates in purely discretionary segregation")); *see also Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) (noting that a plaintiff must allege "whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority") (quoting *Sandin*, 515 U.S. at 486-87).

In *Resnick*, the plaintiff alleged that "in the [Special Housing Unit], recreational opportunities and access to showers are limited; the mattress is flat and dirty; no pillow is allowed; a prisoner cannot have access to the library; and half the time the food is cold." *Resnick*, 213 F.3d at 448 n.3. Despite these allegations, the Ninth Circuit affirmed the dismissal of the plaintiff's claims that the defendants placed him in segregation for refusing to "snitch," because "[h]e did not allege that conditions were different in administrative segregation, nor did he allege the extent to which conditions were better in the general population." *Id*.

Similarly here, Plaintiffs do not distinguish between the conditions in OSP's disciplinary segregation unit compared to its administrative segregation unit. Instead, Plaintiffs group together all of the segregation units, and allege generally that all of the segregation units impose similar "solitary confinement" conditions. (*See* SAC ¶¶ 17-18, "Solitary confinement takes several forms in Oregon. The most common is disciplinary segregation in the Disciplinary Segregation Unit (DSU), where people are sent via sanction for most basic rule violations. Often,

---

"placed in DSU" and "sent to DSU" *with* SAC ¶ 17, alleging that both Mora-Contreras and Staggs were "placed in ASU/IMU prior to a hearing on their disciplinary sanction").

PAGE 6 – OPINION AND ORDER

DSU is the first point of contact for solitary confinement in ODOC. Some inmates are transferred to Administrative Segregation Unit (ASU) or the Intensive Management Unit (IMU), or are placed in ASU/IMU prior to a hearing on their disciplinary sanction, as Plaintiffs were. Regardless of designation or type of segregation, solitary confinement in Oregon means spending on average 23 hours in a 6-by-10-foot cell with no natural light or access to outdoors or fresh air and limited opportunities to speak to people."). Plaintiffs also fail to allege how the conditions they faced in segregation were atypical or significant compared to the conditions they experienced in the general population.

Specifically, Mora-Contreras alleges that he was placed in a hot, stuffy cell with no sunlight, he suffered from intense heat during his stay in segregation from April to June because the segregation unit lacked air conditioning, and the fans in the segregation unit were very loud. (SAC ¶ 44.) Mora-Contreras does not allege that the general population units were air-conditioned or less stuffy, nor that the fans in those units were quieter. Staggs, who was housed in segregation during the winter months, does not complain of any temperature or sound issues, but does allege that the correctional officers overused pepper spray and tasers in the segregation unit. (SAC ¶ 59.) Staggs does not allege that correctional officers in the general population units did not use pepper spray or tasers, and unfortunately, the Court is well aware based on other pending federal cases that individuals in general population are regularly exposed to secondhand pepper spray.[4]

///

---

[4] Staggs may have been able to state an Eighth Amendment claim against an individual defendant for refusing him a timely shower when he was exposed to secondhand pepper spray, but even if Staggs has exhausted such a claim, he has not named any individual involved in that incident as a defendant in this action.

PAGE 7 – OPINION AND ORDER

For these reasons, Plaintiffs have not adequately alleged that their confinement to a

segregation unit imposed an atypical and significant hardship, and for that additional reason they

have failed to state a due process claim. *See Resnick,* 213 F.3d at 445, 448 n.3 (affirming

dismissal of retaliation claims where the plaintiff alleged conditions that were "'within the range

of confinement to be normally expected' by prison inmates 'in relation to the ordinary incidents

of prison life'" because the plaintiff "did not allege that conditions were different in

administrative segregation nor did he allege the extent to which conditions were better in the

general population") (quoting *Sandin*, 515 U.S. at 486-87); *Lewis v. Or. Dep't of Corr.*, No.

2:17-cv-01212-MC, 2018 WL 6059367, at *2 (D. Or. Nov. 16, 2018) (dismissing due process

claims with prejudice where the plaintiff failed to "allege a protected liberty interest implicated

by his segregation, and further amendment would not cure this deficiency"); *Remington v.

Myrick*, No. 2:16-cv-01993-PK, 2017 WL 3319112, at *4-6 (D. Or. Aug. 3, 2017) (dismissing

due process claims with prejudice where the plaintiff alleged that "constant noise and lighting" in

disciplinary segregation "made sleep difficult," and noting that the plaintiff "was confined under

the same conditions as other inmates in DSU" and "[h]e does not allege that he suffered from

any personal characteristics that would have made conditions in DSU particularly difficult for

him"); *see also Holloway v. Cohen*, 61 F. App'x 435, 437 (9th Cir. 2003) ("The district court

properly dismissed [the plaintiff's] substantive due process claim because [he] failed to allege

that his detention in administrative segregation constituted a deprivation of liberty that shocks

the conscience or interferes with rights implicit in the concept of ordered liberty.") (citing *Nunez

v. City of L.A.*, 147 F.3d 867, 871 (9th Cir. 1998)).

### 2.    Eighth Amendment Claims

The Court dismissed Plaintiffs' Eighth Amendment claim on the ground the Court must

follow the "law of the land," which has long held that "solitary confinement . . . is not itself

PAGE 8 – OPINION AND ORDER

unconstitutional." *Thomasson v. Premo*, No. 14-01788-MO, 2017 WL 2403565, at *3 n.1 (D. Or. June 2, 2017) (citing *Wilkinson v. Austin*, 545 U.S. 209, 224-25 (2005) and *Hutto v. Finney*, 437 U.S. 678, 685 (1978)). (*See* F&R at 16-17.) Plaintiffs' new allegations do not impact the Court's analysis.

Although the Court must dismiss Plaintiffs' Eight Amendment claim, the undersigned joins the growing number of federal judges who acknowledge the "research suggesting that the conditions to which inmates in solitary confinement are subjected often lead to profound psychological peril for the inmate, and as such, the use of solitary confinement itself may implicate an Eighth Amendment violation." *Thomasson*, 2017 WL 2403565, at *3 n.1*; see also Apodaca v. Raemisch*, 139 S. Ct. 5, 6 (2018) (Sotomayor, J., respecting the denial of certiorari) (noting that "[a] punishment need not leave physical scars to be cruel and unusual[,]" and "we do know that solitary confinement imprints on those that it clutches a wide range of psychological scars"); *Ruiz v. Texas*, 137 S. Ct. 1246, 1247 (2017) (Breyer, J., dissenting) (noting that the petitioner "developed symptoms long associated with solitary confinement, namely severe anxiety and depression, suicidal thoughts, hallucinations, disorientation, memory loss, and sleep difficulty"); *Davis v. Ayala*, 135 S. Ct. 2187, 2208 (2015) (Kennedy, J., concurring) ("Of course, prison officials must have discretion to decide that in some instances temporary, solitary confinement is a useful or necessary means to impose discipline and to protect prison employees and other inmates. But research still confirms what this Court suggested over a century ago: Years on end of near-total isolation exact a terrible price."); *Porter v. Clarke*, 923 F.3d 348, 355-57 (4th Cir. 2019) (providing an overview of the literature and studies recognizing the deleterious effects of solitary confinement); *Grissom v. Roberts*, 902 F.3d 1162, 1175-77 (10th Cir. 2018) (Lucero, J., concurring in judgment) (concurring in judgment granting the defendant's

motion for summary judgment because precedent "compel[s] the outcome of this case," but citing studies addressing the effects of solitary confinement and recognizing the serious harms of solitary confinement and noting that "[g]iven our society's present understanding that prolonged solitary confinement inflicts progressive brain injury, we cannot consider such prolonged, unjustified confinement as anything other than extreme and atypical"); *Palakovic v. Wetzel*, 854 F.3d 209, 225-26 (3d Cir. 2017) (acknowledging "the robust body of legal and scientific authority recognizing the devastating mental health consequences caused by long-term isolation in solitary confinement"); *Kervin v. Barnes*, 787 F.3d 833, 837 (7th Cir. 2015) (recognizing that the "serious psychological consequences of . . . quasi-solitary imprisonment [has] been documented"); *see also* Reginald Dwayne Betts, *Only Once I Thought About Suicide*, 125 Yale L.J. F. 222 (2016); Stuart Grassian, *Psychiatric Effects of Solitary Confinement*, 22 Wash. U. J. L. & Pol'y 325 (2006).

Our jurisprudence has not kept pace with the evolving science and social science demonstrating that the *solitary* aspect of solitary confinement is cruel and unusual. This Court agrees that the constitutionality of solitary confinement for any period of time beyond what the United Nations has deemed to be torture is an important issue for appellate review. *See Glossip v. Gross*, 135 S. Ct. 2726, 2765 (2015) (Breyer, J., dissenting) ("[T]he United Nations Special Rapporteur on Torture has called for a global ban on solitary confinement longer than 15 days.").

### 3. Equal Protection Claims

The Court dismissed Plaintiffs' equal protection claims on the ground that Plaintiffs failed to allege facts plausibly suggesting that Defendants acted with an intent or purpose to discriminate against Plaintiffs based upon their membership in a protected class. (F&R at 18-19.) The Court noted that Plaintiffs have alleged that Defendants targeted them for reasons other than their race (including because they were uncooperative in the drug investigation), and Plaintiffs

PAGE 10 – OPINION AND ORDER

have not alleged that Defendants targeted only non-white individuals in the drug investigation or

that Defendants treated similarly situated white individuals differently. *See Cabrera v. Maddock*,

No. 10-611, 2012 WL 3778827, at \*5 (E.D. Cal. Aug. 30, 2012) ("Although it is clear that

Plaintiff believes the prisoners searched were targeted because of their race, the factual

allegations indicate that race may not have been a motivating factor. [The defendant] allegedly

told Plaintiff that the search was in response to an assault on prison guards, for the purpose of

discovering evidence of gang affiliation, and that thirty-one prisoners were targeted. Plaintiff's

personal belief that the search was motivated by race by itself is not sufficient to state a claim.

The fact that Hispanics alone were targeted is significant. However, to state an equal protection

claim, an amended complaint . . . should provide enough circumstantial detail, such as statements

or specific conduct, to support his conclusion that race was a motivating factor in the search

rather than a coincidence.") (citation omitted).

In the second amended complaint, Plaintiffs add only that "[u]pon information and belief,

Mr. Mora-Contreras believed that Defendant Yancey did not like him because of his influence

among latinx inmates in ODOC." (SAC ¶ 28.) Plaintiffs have not pled any facts to support Mora-

Contreras' belief that Yancey targeted him because of his race, and therefore they have failed to

state a plausible equal protection claim.[5] *See Hedlin v. San Mateo Cty. Sheriff's Dep't*, No. C 06-

4321 JSW (PR), 2007 WL 160950, at \*1 (N.D. Cal. Jan. 17, 2007) ("A prisoner alleging denial

of equal protection under 42 U.S.C. § 1983 based on race or other suspect classification must

plead intentional unlawful discrimination or allege facts that are at least susceptible of an

---

[5] Plaintiffs also allege that solitary confinement is an "institution which arbitrarily
punishes people of color at greater rates" (SAC ¶ 78; Pls.' Resp. at 24-25), which the Court
accepts as true for the purpose of evaluating the motion of dismiss, but Plaintiffs nevertheless fail
to state an equal protection claim here because they have not pled facts to support a plausible
claim that Defendants placed them in solitary confinement because they are persons of color.

PAGE 11 – OPINION AND ORDER

inference of discriminatory intent.") (citing *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir.1998)); *see also Solis v. City of Fresno*, No. 1:11-CV-00053 AWI GSA, 2012 WL 868681, at *8 (E.D. Cal. Mar. 13, 2012) (dismissing the plaintiff's equal protection claim because "[i]n the post-*Twombly* and *Iqbal* era, pleading on information and belief, without more, is insufficient to survive a motion to dismiss for failure to state a claim").

### 4.    First Amendment Claims

The Court dismissed Plaintiffs' First Amendment claims on the ground that even if they have a First Amendment right not to serve as an informant or not to provide false testimony, that right was not clearly established at the time of the events in question and therefore Defendants are entitled to qualified immunity. (F&R at 20-22 (citing *Burns v. Martuscello*, 890 F.3d 77, 81 (2d Cir. 2018) (holding that "the First Amendment protects both a prisoner's right not to serve as an informant, and to refuse to provide false information to prison officials[,]" just as "citizens enjoy a First Amendment right to refuse to provide false information to the government"); *but see Elliott v. Caballero*, No. 19-cv-06005-PJH, 2020 WL 587198, at *3 (N.D. Cal. Feb. 6, 2020) ("[P]laintiff has cited no cases and the court has not found caselaw indicating that refusing to snitch is considered protected conduct for a retaliation claim[,]" and recognizing that the Ninth Circuit has held that "'there is no constitutional right not to snitch'") (quoting *United States v. Paguio*, 114 F.3d 928, 930 (9th Cir. 1997)). Plaintiffs argue that the doctrine of qualified immunity is "neither legally tenable nor prudentially sustainable" (Pls.' Resp. at 8-9), and that the Court should address the merits of their First Amendment claims. (Pls.' Resp. at 11.)

Plaintiffs' First Amendment claims are based on their allegations that Defendants tried to compel each of them to provide false testimony, and then retaliated against them when they refused. Mora-Contreras seeks only damages with respect to his First Amendment claim, because he is no longer in ODOC custody and therefore his claims for injunctive and declaratory relief

PAGE 12 – OPINION AND ORDER

are moot. (F&R at 4-7.) As the Court previously held, qualified immunity bars Mora-Contreras'

claim for damages.

Staggs also seeks both declaratory and injunctive relief on his First Amendment claim.

(SAC ¶¶ 90-91; *see Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 527 (9th Cir.

1989) ("Qualified immunity is an affirmative defense to damage liability; it does not bar actions

for declaratory or injunctive relief.") (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982)).

However, Staggs alleges that Yancey compelled him to provide false testimony, and retaliated

against him when he refused, and Staggs does not allege that any other defendant was involved

in, or aware of, Yancey's actions.[6] Accordingly, Staggs has not stated a First Amendment claim

against the other defendants. Furthermore, Staggs acknowledges that Yancey is no longer

employed by ODOC (SAC ¶ 5), and therefore Staggs' claims for injunctive and declaratory relief

against Yancey are moot.[7] *See Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 868 (9th Cir.

2017) ("'[A] declaratory judgment merely adjudicating past violations of federal law—as

opposed to continuing or future violations of federal law—is not an appropriate exercise of

federal jurisdiction.'") (quoting *Green v. Mansour*, 474 U.S. 64, 74 (1985)); *Platt v. Inc. Vill. of

Southampton*, 391 F. App'x 62, 66 (2d Cir. 2010) ("It is well-settled that '[a] plaintiff seeking

injunctive or declaratory relief cannot rely on past injury to satisfy the [actual case or

controversy's] injury requirement but must show a likelihood that he or she will be injured in the

---

[6] In their response, Plaintiffs assert that defendant Plante also fabricated evidence against Staggs (Pls.' Resp. at 15), but the Second Amended Complaint does not include such allegations. *See* SAC ¶¶ 54-55 (alleging only that Plante conducted the investigation of Staggs and was on vacation while Staggs awaited a hearing).

[7] Defendants also argue that Plaintiffs' requests for broad injunctive relief do not comply with the Prison Litigation Reform Act ("PLRA"). (Defs.' Mot. at 3-4.) Plaintiffs argue that the PLRA's limits are unconstitutional. (Pls.' Resp. at 6-8.) The Court need not reach the question in light of its dismissal of Plaintiffs' claims.

future'") (citation omitted); *see also Cook v. Cashler*, No. 11-637, 2013 WL 1213678, at *3 (W.D. Mich. Mar. 5, 2013) (finding that the plaintiff's claim for declaratory relief against a prison hearing officer would be moot if the hearing officer had retired because the hearing officer "is no longer in any position to affect plaintiff's rights"); *Hines v. Wise*, No. 16-461, 2016 WL 7743035, at *10 (S.D. Ala. Dec. 5, 2016) (holding that an individual in custody's claims for injunctive and declaratory relief against former officials "are moot and subject to dismissal").

Qualified immunity bars Plaintiffs' claim for damages with respect to their First Amendment claims, and Staggs' claims for declaratory and injunctive relief are moot. Therefore, the Court dismisses Plaintiffs' First Amendment claims.

## CONCLUSION

For the reasons stated, the Court GRANTS Defendants' motion to dismiss the second amended complaint (ECF No. 69). The Court has already provided Plaintiffs with two opportunities to amend their complaint, and therefore the Court dismisses this case with prejudice.[8]

**IT IS SO ORDERED.**

DATED this 30th day of April, 2020.

_____
STACIE F. BECKERMAN
United States Magistrate Judge

---

[8] *See Lewis*, 2018 WL 6059367, at *3 (dismissing section 1983 claims with prejudice after providing the plaintiff an opportunity to amend his complaint); *Remington*, 2017 WL 3319112, at *6 (same).